No. 3--07--0893

Filed December 12, 2008

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

| | | |
|---|---|---|
| In re DANIEL M., | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| a Person Asserted to be | ) | Rock Island County, Illinois, |
| Subject to Involuntary | ) | |
| Admission | ) | |
| | ) | |
| (The People of the State of | ) | |
| Illinois, | ) | No. 07--MH--14 |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Daniel M., | ) | Honorable |
| | ) | John L. Bell, |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE HOLDRIDGE delivered the opinion of the court:

The trial court issued an order that the respondent, Daniel M., was subject to involuntary admission to a mental health facility (405 ILCS 5/3--600 (West 2006)). The respondent appeals, arguing that the trial court's order should be reversed because the State failed: (1) to file a dispositional report as required by section 3--810 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3--810 (West 2006)); and (2) to prove that inpatient hospitalization was the least restrictive treatment alternative. We reverse.

FACTS

On October 16, 2007, after the respondent had been brought to Kewanee Hospital by the police, a petition and two medical certificates seeking involuntary admission for the respondent were filed pursuant to section 1--119 of the Code. 405 ILCS 5/1--119 (West 2006). The petition alleged that the respondent was: (1) mentally ill and reasonably expected to inflict harm on himself or others in the near future because of the illness (405 ILCS 5/1--119(1) (West 2006)); and (2) mentally ill and unable to provide for his basic physical needs (405 ILCS 5/1--119(2) (West 2006)). The petition included the following allegations: the respondent threw a cast-iron skillet and telephone at his mother on October 15, 2007; the respondent believed that people urinated and defecated in his food and beverages; the respondent refused medication because he believed people came into his house and switched his medication; the respondent had grandiose delusions about inventing the Ipod and writing the lyrics to popular songs and was upset that he had not been compensated; the respondent stated that he had been blacklisted by the Federal Bureau of Investigation and the Central Intelligence Agency; and the respondent was expected to be a continuing threat to others if he was not hospitalized.

On that same date, a result review report of Dr. Eric Ritterhoff, a psychiatrist at Robert Young Mental Health Center, was filed. The report indicated the respondent had been hospitalized for mental illness in 1985 and 1989. It also

2

indicated that Ritterhoff observed the respondent in the emergency room at Kewanee Hospital on October 15, 2007, and reviewed the written material the respondent produced that day. Ritterhoff concluded that the written material described a "severe complex delusional system of grandiosity and paranoia."

Ritterhoff stated his impression was that the respondent suffered from "[s]chizoaffective schizophrenia bipolar type." He described the respondent's delusions about writing lyrics for popular songs and his paranoia about the government and his mother. Ritterhoff further observed:

"[The respondent] is unable to talk for any extended period of time without introducing multiple delusional observations about me as far as being compromised and that he is needing to tell me what to do. His judgment is severely impaired. He has lack of insight. He feels very easily threatened and acknowledges being threatening toward his mother but feels justified on this based on the delusional statements already made."

He then concluded:

"[The respondent] will be housed involuntarily on the psychiatric unit for continued professional observation will be made. Attempts will be made to engage him in treatment for his mental disorder. However it is this examiner's opinion that due to the length of his psychotic process that the likelihood of response in the near future is almost nil and that therefore he should be referred to the state

3

facility for chronic mental health care on an involuntary basis."

On November 27, 2007, the trial court held a hearing on the petition.  Ritterhoff testified about his observations of the respondent on October 15, as detailed in his report.  He then testified that he had examined the respondent about 45 times since that day.

Ritterhoff testified that the respondent suffered from schizoaffective schizophrenia bipolar type for about 30 years.  He testified that the illness affects everything that the respondent does.  The respondent believed that he was entitled to payment for his creative talents as a lyricist for popular bands and that he had been sodomized several times since 1983.  He believed that the government was conspiring against him and had fed him tainted food to alter his moods and periodically subject him to involuntary care.

Ritterhoff stated that the respondent became aggressive, agitated, and argumentative when someone disagreed with him.  He noted that the respondent had thrown a frying pan and a telephone at his mother, which led to his current hospitalization, because he thought she was a imposter who was trying to torment him by preventing him from getting food.  Ritterhoff opined that the respondent would act on his delusions if he was not in a safe environment and medicated.

Ritterhoff recommended that the respondent be hospitalized at Singer Zone Mental Health Center (Singer) and that he receive

4

mood stabilizing and antipsychotic medication.  In response to an inquiry as to whether he considered alternative treatments, Ritterhoff responded:

> "Whenever attempts are made to discuss with [the respondent] what his life would be like subsequent to not being in this institution, his responses are delusional comments about his life.  His choices are effected by his paranoid delusions and I have not felt that he would be appropriate for a less intense setting."

Ritterhoff concluded that the hospitalization in the Singer Zone Mental Health Center was the least restrictive placement alternative.

The respondent testified that he completed law school and had a master's degree in political science.  He spoke three languages.  He stated that he enlisted in the Navy after high school and that he had tried to pursue citizenship in Sweden but was denied citizenship because the United States government had possibly interfered.

The respondent testified that he lobbed a frying pan and telephone table in the general direction of his mother but that he did not throw it at her.  He threw the objects as a way of expressing his anger.  He testified that he was angry about not eating in two or three days and was not acting on a delusion about his mother being an imposter.  The respondent noted that he believed that imposters were possible based on things he had seen

5

in movies but recognized that he may have been delusional when he thought someone was an imposter.

The respondent testified that he had been treated for mental illness through medication and therapy.  He stated that if he were released, his father would give him a car and money to get an apartment.

The trial court found that the respondent was subject to involuntary admission and ordered that he be admitted to the Department of Human Services, Singer facility.

The respondent appeals.

ANALYSIS

Initially, the State argues that this appeal is moot because the trial court's order had a duration of 90 days and 90 days have since passed.  We will review the merits of the appeal pursuant to the supreme court's holding in In re Barbara H., 183 Ill. 2d 482, 492, 702 N.E.2d 555, 559 (1998) ("To apply the mootness doctrine under these circumstances would mean that recipients of involuntary mental health services would be left without any legal recourse for challenging the circuit court's orders.").

On appeal, the respondent first argues that the trial court's order should be reversed because the State failed to file a dispositional report as required by section 3--810 of the Code (405 ILCS 5/3--810 (West 2006)).  Section 3--810 provides:

"Before disposition is determined, the facility director or such other person as the court may direct shall

6

prepare a written report including information on the appropriateness and availability of alternative treatment settings, a social investigation of the respondent, a preliminary treatment plan, and any other information which the court may order. The treatment plan shall describe the respondent's problems and needs, the treatment goals, the proposed treatment methods, and a projected timetable for their attainment. If the respondent is found subject to involuntary admission, the court shall consider the report in determining an appropriate disposition." 405 ILCS 5/3--810 (West 2006).

The State admits that no dispositional report was filed at the time of the respondent's hearing. The record also reveals that the respondent did not object to the absence of the report. The State argues that, in the absence of an objection by the respondent, oral testimony about the information required by section 3--810 should be sufficient to satisfy the statute and, therefore, the error in failing to file the report should be deemed harmless.

In In re Alaka W., 379 Ill. App. 3d 251, 884 N.E.2d 241 (2008), we addressed compliance with section 3--810 and stated, in accord with the supreme court holding in In re Robinson, 151 Ill. 2d 126, 601 N.E.2d 712 (1992), that "[t]he State satisfies the requirements of section 3-810 absent a formal written report only when the testimony provides the specific information required by the language of the statute." Alaka W., 379 Ill.

7

App. 3d at 270, 884 N.E.2d at 256. We further suggested that strict compliance with section 3--810 should be required because, although we had repeatedly stated the need for strict compliance with legislatively established procedural safeguards for involuntary commitment proceedings, the caselaw indicated that the State continued to disregard the procedural safeguards. Alaka W., 379 Ill. App. 3d 251, 884 N.E.2d 241. We now reiterate the need for strict compliance with legislatively mandated procedural safeguards to protect and balance the competing interests of society and individuals subject to involuntary commitment. However, we will not require strict compliance in this case, and we will review the State's testimony to determine whether it satisfied the requirements of section 3--810.

In this case, the oral testimony offered by the State's sole witness, Ritterhoff, did not provide all the information required by section 3--810. Ritterhoff provided information about the length of the respondent's mental illness and his problems, but he did not provide any information about the appropriateness and availability of alternative treatment or an adequate treatment plan. Ritterhoff summarily concluded that hospitalization was the least restrictive treatment alternative but did not testify as to what alternative treatments may have been available and why they were inappropriate in this case. Ritterhoff did not discuss treatment goals or a projected timetable for their attainment; he just stated that the respondent should be hospitalized and medicated. Such information was inadequate to satisfy the

8

requirements of section 3--810. See <u>Alaka W.</u>, 379 Ill. App. 3d 251, 884 N.E.2d 241 (finding that the State did not comply with section 3--810 where its witnesses' testimony did not address available alternative treatment, why such treatments were inappropriate, the treatment goals, or a timetable for attainment of those goals). The State's failure to file a dispositional report required by section 3--810, or to present oral testimony containing the information required to be in the report, mandates reversal of the trial court's order.

The respondent also argues that the trial court's order should be reversed because the State failed to prove that inpatient hospitalization was the least restrictive treatment alternative.

Hospitalization may only be ordered when the State shows that it is the least restrictive treatment alternative. <u>Alaka W.</u>, 379 Ill. App. 3d 251, 884 N.E.2d 241. To satisfy this requirement, the State must "present evidence of what, if any, alternative treatments are available and why they are not suitable for the respondent." <u>In re Alaka W.</u>, 379 Ill. App. 3d at 273, 884 N.E.2d at 259.

In the present case, in response to questioning about whether he considered alternative treatments, Ritterhoff stated that a "less intense setting" would be inappropriate for the respondent because of his delusions. He then summarily concluded that hospitalization was the least restrictive treatment alternative. However, he did not testify about any specific

9

alternative treatments and why they were inappropriate.  The court cannot order hospitalization based on the respondent's mental illness alone without evidence about other treatment alternatives and their appropriateness.  Because the State failed to produce evidence of less restrictive treatment options, it did not meets its burden of proof, and the trial court's order must be reversed.

CONCLUSION

For the foregoing reasons, we reverse the judgment of the circuit court of Rock Island County.

Reversed.

SCHMIDT and CARTER, JJ., concur.