No. 3-08-0690

_____

Filed November 20, 2009

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2009

| | |
|---|---|
| In re ROBIN C., | ) Appeal from the Circuit Court |
| | ) of the 10th Judicial Circuit, |
| a Person Found Subject to | ) Peoria County, Illinois, |
| Involuntary Admission and | ) |
| Authorized Involuntary | ) |
| Treatment | ) |
| | ) |
| (The People of the State | ) |
| of Illinois, | ) No. 08-MH-106 |
| | ) |
| Petitioner-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| Robin C., | ) Honorable |
| | ) Katherine Gorman, |
| Respondent-Appellant). | ) Judge, Presiding. |

_____

JUSTICE LYTTON delivered the opinion of the court:
_____

Respondent Robin C. appeals from judgments entered by the trial court involuntarily committing her to a mental health facility and authorizing the facility's staff to administer psychotropic medication to her against her will. On appeal, she argues that the trial court's order should be reversed because the State failed to (1) file a complete dispositional report as required by section 3-810 of the Mental Health and Developmental

Disabilities Code (Mental Health Code) (405 ILCS 5/3-810 (West 2006)), (2) demonstrate that involuntary commitment was the least restrictive environment and (3) establish that she lacked the capacity to make a reasoned decision to take or refuse medication. Respondent also maintains that the statutes under which she was committed are unconstitutional. We reverse.

On July 26, 2008, officers delivered respondent to Memorial Medical Center in Springfield following an incident at her aunt's house. A social worker completed a petition for involuntary admission. The petition alleged that respondent knocked on her aunt's door and pushed her way into the house, threatening to slap her mother. Respondent was transported to Peoria Methodist Medical Center with the petition that same day.

At Methodist Medical Center, Dr. Simone Turner personally examined respondent and attached a certificate to the petition stating that she was a person with a mental illness who was "reasonably expected to engage in dangerous conduct which may include threatening behavior or conduct that places that person or another individual in reasonable expectation of harm." On July 27, 2008, psychiatrist Thena Poteat completed a second certificate, stating that she had also examined respondent and believed that respondent suffered from a mental illness. Dr. Poteat asserted that because of her illness, respondent was "reasonably expected to inflict serious physical harm on [herself] or another in the near

2

future."   In conjunction with the petition for commitment, Dr. Poteat filed a petition for authority to administer involuntary medication.

Separate hearings were conducted on July 30, 2008. Dr. Poteat was the only witness to testify. At the commitment hearing, Dr. Poteat stated that she had been treating respondent since her arrival at Methodist Medical Center on July 26. She had examined respondent three or four times and believed that she suffered from schizophrenia. She first interviewed respondent on July 27, 2008. During that session, respondent asked to sign a voluntary application for commitment. Dr. Poteat refused to allow her to sign the application because respondent admitted that she would "turn right around and sign a request for discharge." Respondent then got up and started to leave the room. As she approached the door, she quickly turned around and "got very close" to Dr. Poteat. She asked Poteat what hospital she was in and where the hospital was located. Dr. Poteat testified that respondent's conduct was "intimidating and threatening," and she was afraid respondent might do something violent.

Respondent also refused to sign a release for her records from Memorial Hospital in Springfield. However, the hospital did forward her records in the interest of her care. Based on information she obtained from the commitment petition and the medical records, Dr. Poteat testified that respondent had a history

3

of severe psychotic illness, which included making violent threats. On July 26, she was taken to Springfield Memorial Hospital after she pushed her way into her aunt's house and threatened to slap her mother. The previous day, she was walking down the yellow line in the street. Springfield police officers had to remove her from the middle of traffic. Past records also reported allegations of frightening children and teachers at a school in 2006 and threatening people at a public library in 2007.

In Dr. Poteat's opinion, respondent was suffering from schizophrenia, paranoid-type and did not recognize the need for treatment. When respondent first arrived at the hospital, she refused oral medication. The staff was required to give her injections for safety reasons. Dr. Poteat believed that respondent needed medication. At the time of the hearing, respondent was voluntarily taking psychotropic medication. However, Dr. Poteat believed respondent agreed to take the medication not because she recognized the need for treatment but because she thought it would help her efforts to seek discharge. Dr. Poteat wanted to change respondent's medications, but respondent would not discuss the matter with her.

When asked about respondent's treatment, Dr. Poteat testified "I would like to have her be able to go back to McFarland Hospital where they have a history of working with her and the staff there know[s] her. She's been hospitalized there in the past and

4

potentially could be there for a longer--could potentially be treated there." Based on her examination of respondent, Dr. Poteat believed that respondent's condition had not improved sufficiently to allow her release into any placement less restrictive placement than a mental health hospital.

On cross-examination, Dr. Poteat stated that most of her information about respondent had been from medical records because respondent had not been receptive to her efforts to engage in conversation. Respondent was 45 years old at the time of the hearing. Dr. Poteat had no idea how long she had been suffering from her mental illness. Respondent's records revealed that she had previously functioned at a high level, serving in the military and receiving an associate's degree. Dr. Poteat was unsure how severe respondent's current episode was compared to previous hospitalizations.

The trial court concluded that the State proved by clear and convincing evidence the elements necessary to support its petition. The court found Robin C. subject to involuntary admission and ordered her hospitalized in a Department of Human Services facility for 90 days. See 405 ILCS 5/3-813 (West 2006).

Immediately following the commitment hearing, the trial court conducted an involuntary medication hearing. Dr. Poteat stated that respondent had engaged in threatening and disruptive behavior and that some of the threatening behavior had been directed toward

5

her.  Respondent suffered from schizophrenia, paranoid type, and had been repeatedly hospitalized since 2005.

As an outpatient, respondent refused to stay on her medications.  Respondent had taken Risperadal in the past with some success.  She was less aggressive during her current hospitalization when she was given Zyprexa.  Dr. Poteat listed several medications on the petition, including Zyprexa, Risperadal, Risperadal Contra, Haldol, Haldol Deconate, and Cogentin.  She listed all six so that she could change respondent's prescription if one of the medications had an unwanted side effect.  Dr. Poteat testified that respondent exhibited a deterioration in her ability to function and lacked the capacity to make informed decisions about her medication.  In Dr. Poteat's opinion, respondent lacked the capacity to consent to psychotropic medication "due to her lack of insight."

The trial court granted the petition for involuntary medication and approved the listed medications to be administered by Dr. Poteat for a period of 90 days.  See 405 ILCS 5/2-107.1(a-5)(5) (West 2006).

ANALYSIS

I.  Mootness

Initially, the State argues that this appeal is moot because the trial court's order had a duration of 90 days and 90 days have since passed.  In this case, respondent could only be held

6

involuntarily and forced to take psychotropic medication against her will if a new set of petitions were filed. See In re Barbara H., 183 Ill. 2d 482 (1998). As a general rule, a reviewing court will not decide moot questions, render advisory opinions or consider issues where the result will not be affected regardless of how the issue is decided. In re Mary Ann P., 202 Ill. 2d 393 (2002). However, we will consider otherwise moot issues that fall within two established exceptions to the mootness doctrine that apply in this case: (1) the "public interest" exception; and (2) the "capable of repetition yet evading judicial review" exception. See In re Alfred H.H., 233 Ill. 2d 345 (2009).

The first exception, public interest, allows a court to consider an otherwise moot case when (1) the question presented is of a public nature, (2) there is a need for an authoritative determination for the future guidance of public officers, and (3) there is a likelihood of future recurrence of the question. Alfred H.H., 233 Ill. 2d at 355. Here, the substantive issue on appeal involves the State's compliance with section 3-810 of the Mental Health Code. The question presented is of a public nature and our determination will guide the State in filing future dispositional reports. See In re Andrew B., 386 Ill. App. 3d 337 (2008) (procedures court must follow to authorize involuntary commitment and medication involve substantial public concern). In addition, the resolution of this issue will contribute to the efficient

7

operation of our judicial system.  See <u>In re Splett</u>, 143 Ill. 2d 225 (1991) (resolving statutorily required notice in involuntary commitment cases).  Moreover, whether the State has fulfilled the requirements of section 3-810 will likely recur in future involuntary commitment cases.  Thus, the public interest exception applies to this case.

The issue raised by respondent is also capable of repetition yet avoiding judicial review.  This exception to the mootness doctrine allows review of the issue if (1) the challenged action is of a duration too short to be fully litigated prior to its cessation and (2) there is a reasonable expectation that the same party would be subject to the same action again.  <u>Barbara H.</u>, 183 Ill. 2d at 491.  There is no question that this action is too short in duration to be fully litigated in an appeal.  There is also a reasonable expectation that respondent would be subject to the same action again.  The record indicates that respondent has been involuntarily committed on prior occasions.  She suffers from schizophrenia and she will likely confront involuntary commitment in the future.  Although the facts surrounding a new commitment petition may be slightly different, section 3-810 must still be applied.  Thus, the resolution of the statutory compliance issue in this case would have some bearing on a subsequent case involving respondent.  See <u>In re A Minor</u>, 127 Ill. 2d 247 (1989) (applied exception noting that it was sufficient that same statutory

8

provision will most likely be applied in future cases involving the same party).

Under these circumstances, we conclude that the "public interest" exception and the "capable of repetition yet evading review" exception apply. Accordingly, we will review respondent's argument on the merits.

## II. Compliance with Section 3-810

Respondent argues that the trial court's order should be reversed because the State failed to file a complete dispositional report as required under section 3-810 of the Mental Health Code.

Section 3-810 provides:

"Before any disposition is determined, the facility director or such other person as the court may direct shall prepare a written report including information on the appropriateness and availability of alternative treatment settings, a social investigation of the respondent, a preliminary treatment plan, and any other information which the court may order. The treatment plan shall describe the respondent's problems and needs, the treatment goals, the proposed treatment methods, and a projected timetable for their attainment. If the respondent is found subject to involuntary admission, the court shall consider the report in determining an appropriate disposition." 405 ILCS 5/3-810 (West 2006).

9

The purpose of the report is to provide trial courts with the information necessary for determining whether an individual is subject to involuntary commitment.  A dispositional report helps to protect against unreasonable commitments and to ensure adequate treatment for the mentally ill.  In re Robinson, 151 Ill. 2d 126, 133 (1992).

Here, the State admits that the dispositional report lacked a social investigation report and a report on possible alternative placements.  Nevertheless, the State argues that, in the absence of an objection by respondent, Dr. Poteat's oral testimony was sufficient to satisfy the statute.  We disagree.

In In re Robinson, our supreme court held:

> "Where a respondent fails to object to the absence of a predispositional report, strict compliance with section 3-810 is required only when the legislative intent cannot otherwise be achieved. [Citation.] Under these circumstances, we believe that oral testimony containing the information required by the statute can be an adequate substitute for the presentation of a formal, written report."  151 Ill. 2d at 134.

However, we have repeatedly recognized that, in the context of section 3-810, cursory testimony is not an adequate substitute for a treatment plan or a written discussion of treatment alternatives incorporated in a formal report.  In re Alaka W., 379 Ill. App. 3d

10

251 (2008); In re Daniel M., 387 Ill. App. 3d 418 (2008); In re Luttrell, 261 Ill. App. 3d 221 (1994). "The State satisfies the requirements of section 3-810 absent a formal written report only when the testimony provides the specific information required by the language of the statute." Alaka W., 379 Ill. App. 3d at 270. The State's failure to meet the requirements of section 3-810 results in error which is neither harmless nor forfeited. Alaka W., 379 Ill. App. 3d at 269.

In this case, the testimony the State elicited at the commitment hearing did not provide the specific information required under section 3-810. Dr. Poteat testified that no less restrictive course of treatment was available for respondent other than hospitalization in a mental health facility. This testimony was conclusory and unsupported by a factual basis. Dr. Poteat stated that she "would like" respondent to be placed in a mental hospital equipped to handle her condition, but she did not explain what other alternative treatments may be available and why she believed those alternatives were inappropriate. Further, Dr. Poteat did not identify the projected timetables for the treatment goals set forth in the treatment plan. Thus, her testimony did not provide the court with the information necessary to balance the interests at hand and adequately consider an appropriate disposition. The State's failure to file a complete dispositional report or present testimony that otherwise satisfied the statutory

11

requirements, mandates reversal of the trial court's order.  See Alaka W., 379 Ill. App. 3d at 271.

### III.  Constitutional Claims

Respondent also claims that section 1-119.1(1) and section 104.5 of the Mental Health Code violate due process as guaranteed by the federal and state constitutions.  U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, §2.

In People v. Hampton, 225 Ill. 2d 238 (2007), the Illinois Supreme Court reaffirmed the long-standing rule that cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort:

> "Constitutional issues should be addressed only if necessary to decide a case.  People v. Waid, 221 Ill. 2d 464 (2006), quoting People ex rel. Sklodowski v. State of Illinois, 162 Ill.2d 117 (1994).  As noted in E.H., this court has gone so far as to add a requirement to our rules that courts include a written statement that the decision cannot rest upon an alternate, nonconstitutional basis before deciding a case on constitutional grounds.  In re E.H., 224 Ill. 2d at 178, citing 210 Ill. 2d R. 18(c)(4) (eff. September 1, 2006)."  Hampton, 225 Ill. 2d at 244.

Here, we have reversed on statutory grounds.  We therefore decline to address the constitutional issues raised on appeal.

12

## CONCLUSION

The judgment of the circuit court of Peoria County is reversed.

Reversed.

HOLDRIDGE and SCHMIDT, JJ., concur.