# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Connie G.*, 2011 IL App (3d) 100420

---

| | |
|---|---|
| Appellate Court Caption | *In re* CONNIE G. (The People of the State of Illinois, Petitioner-Appellee, v. Connie G., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-10-0420 |
| Filed | August 31, 2011 |
| Rehearing denied | October 6, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A petition for respondent's involuntary admission was properly granted where respondent filed a request for discharge about one month after her voluntary admission, she was not denied her right to rescind her request for discharge, the petition complied with the Mental Health and Developmental Disabilities Code, and her psychiatrist's testimony established that involuntary commitment was the least restrictive environment. |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 10-MH-10; the Hon. John L. Bell, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Cynthia Z. Tracy, of Guardianship and Advocacy Commission, of Peoria, Laurel Spahn (argued), of Guardianship and Advocacy Commission, of Hines, and Veronique Baker, of Guardianship and Advocacy Commission, of Chicago, for appellant.

Jeff Terronez, State's Attorney, of Rock Island (Terry A. Mertel and Richard T. Leonard (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE LYTTON delivered the judgment of the court, with opinion.

Justice O'Brien concurred in the judgment and opinion.

Justice Schmidt dissented, with opinion.

**OPINION**

¶ 1 Approximately one month after voluntarily admitting herself to Robert Young Mental Health Center for treatment, respondent Connie G. filed a request for discharge. A few days later, Connie G.'s roommate at Robert Young filed a petition for involuntary admission against Connie G. Following a hearing, the trial court granted the petition. On appeal, Connie G. argues that the trial court erred in granting the petition because (1) she was denied her right to rescind her request for discharge, (2) the petition did not comply with the requirements of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/1-100 *et seq.* (West 2008)), and (3) the State failed to prove that Robert Young was the least restrictive environment. We affirm.

¶ 2 On March 24, 2010, Connie G. voluntarily admitted herself to Robert Young for mental health treatment after swallowing "two handfuls of Valium." On April 2, 2010, Connie G. requested and completed a form entitled, "Request for Discharge," in which she requested discharge from Robert Young. A few days later, she withdrew her request by signing the bottom of the form, which stated, "I withdraw my written notice of my desire to be discharged." On April 8 and April 17, 2010, Connie G. again requested discharge but withdrew each of those requests within five days. On April 25, 2010, Connie G. once again requested discharge by completing a "Request for Discharge" form.

¶ 3 On April 30, 2010, Nicole G., Connie G.'s roommate at Robert Young, filed a petition for involuntary admission against Connie G. The preprinted petition form filed by Nicole G. included a list of "reasons" why involuntary admission was being initiated and instructed the author to "Check all that apply." The only box checked on the petition was the one that stated "emergency admission by certificate" and referred to section 3-600 of the Code (405 ILCS

-2-

5/3-600 (West 2008)). The box that referred to section 3-403 (405 ILCS 5/3-403 (West 2008)) and stated "voluntary admittee submitted written notice of desire to be discharged" was not checked.

¶ 4     In the petition, Nicole G. alleged that Connie G. told her on several occasions in the previous three days that she planned to kill herself by overdose when she left Robert Young. Attached to the petition were certificates from psychiatrists Ernest Galbreath and Eric Ritterhoff, which stated that Connie G. was (1) "reasonably expected to inflict serious physical harm upon *** herself *** in the near future ***; [and]" (2) "in need of immediate hospitalization for the prevention of such harm."

¶ 5     Prior to her involuntary commitment hearing, Connie G. requested an independent psychological examination. The trial court appointed Dr. Kirk Witherspoon, a clinical psychologist, to perform the evaluation. Dr. Witherspoon examined Connie G. on May 8, 2010, and completed a written psychological evaluation. In the evaluation, Dr. Witherspoon noted that Connie G. had filed and rescinded a number of requests to be released from Robert Young. Connie G. told him that she wanted to rescind her last request for release but was told that she could not.

¶ 6     Dr. Witherspoon determined that Connie G. "would appear most likely to benefit from ongoing intense, that is, comprehensive, inpatient mental health treatment to address her myriad concerns and until such time that she has a good, solid plan for recovery and adequate commitment and contract against self-harm." Dr. Witherspoon recommended that Connie G. "be afforded ongoing inpatient mental health treatment, involuntarily if required, to prevent her posing an immediate threat of self-harm."

¶ 7     On May 14, 2010, Connie G.'s involuntary commitment hearing took place. At the beginning of the hearing, the court accepted as evidence Dr. Witherspoon's written psychological evaluation and a one-page handwritten treatment plan prepared by Dr. Ritterhoff, which listed medications needed to treat Connie G.'s various medical conditions, including bipolar disorder. Dr. Ritterhoff testified that he has treated Connie G. for three or four years following several suicide attempts. He testified that she suffers from bipolar disorder, attention deficit disorder, generalized anxiety disorder and "additional problems with emotional development as a result of early childhood experiences." He opined that Connie G. was reasonably likely to inflict serious physical harm on herself in the near future based on recent plans of suicide and "repeated ambivalence about staying in the hospital and working on her problems."

¶ 8     Dr. Ritterhoff's treatment plan for Connie G. included a series of medications to address her medical conditions, as well as cognitive behavior therapy, consisting of exercises to try to improve her feelings. Dr. Ritterhoff considered Connie G.'s social history, including her stunted emotional development as a child, in preparing the treatment plan for her. He considered alternative treatments available to Connie G. but determined that Connie G. "lacks the emotional strength, motivation and independence to sufficiently cope outside of the hospital." He explained that the time frame for Connie G.'s treatment depends on her choices and how quickly she figures out the purpose and meaning of her life. Dr. Ritterhoff concluded that Robert Young is the least restrictive alternative for Connie G.

¶ 9		During his testimony, Dr. Ritterhoff discussed Connie G.'s repeated requests for discharge. She filed three requests prior to the April 25, 2010, request for discharge. After each of the first three requests, he encouraged her to retract the request, and she did. She "refused to withdraw" her last request. Later, she indicated that she regretted filing the request and told him that she filed it because he would not give her a pass to leave Robert Young.

¶ 10		Connie G. denied telling Nicole G. that she planned to commit suicide when she left Robert Young. She admitted that suicide was on her mind at the time, but she denied having a specific plan to kill herself. She admitted that she has attempted suicide five times in the past. She denied having any plan to do so at the time of the hearing.

¶ 11		At the conclusion of the hearing, the trial court found that the State met its burden of proving that Connie G. is a person with a mental illness and because of her illness is "reasonably expected to inflict serious physical harm upon herself." The court ordered that Connie G. be involuntarily admitted to Robert Young for up to 90 days.

¶ 12		I. Mootness

¶ 13		The State argues that Connie G.'s appeal should be dismissed as moot because the trial court's order had a duration of 90 days and 90 days have since passed. Connie G. responds that this case falls within an exception to the mootness doctrine.

¶ 14		As a general rule, courts in Illinois do not decide moot questions. *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). However, courts will consider otherwise moot issues that fall within established exceptions to the mootness doctrine, including the "public interest" exception. *In re Robin C.*, 395 Ill. App. 3d 958, 963 (2009). There is no *per se* exception to mootness that universally applies to mental health cases; however, most appeals of mental health cases will fall within one of the established exceptions to the mootness doctrine. *Alfred H.H.*, 233 Ill. 2d at 355. Whether a case falls within an established exception is a case-by-case determination. *Id.*

¶ 15		The public interest exception allows a court to consider an otherwise moot case when (1) the question presented is of a public nature, (2) there is a need for an authoritative determination for the future guidance of public officers, and (3) there is a likelihood of future recurrence of the question. *Alfred H.H.*, 233 Ill. 2d at 355. Where the substantive issue on appeal involves the State's compliance with the Code, the public interest exception applies. See *In re Nicholas L.*, 407 Ill. App. 3d 1061 (2011); *In re James H.*, 405 Ill. App. 3d 897, 904 (2010); *In re Robin C.*, 395 Ill. App. 3d 958, 963 (2009).

¶ 16		Here, one of the issues raised by Connie G. on appeal is whether the petition for involuntary commitment filed against her by Nicole G. complied with the Code. Because this question involves statutory compliance, it qualifies as a matter of a public nature. See *Nicholas L.*, 407 Ill. App. 3d 1061. Thus, the public interest exception applies. *Id.*

¶ 17		Since an exception to the mootness doctrine applies to this case, we have jurisdiction over Connie G.'s appeal.

¶ 18                               II. Request for Discharge

¶ 19      Connie G. argues that she should not have been subject to involuntary commitment because she attempted to rescind her April 25, 2010, request for discharge but was not allowed to do so.

¶ 20      Section 3-403 of the Code provides that a voluntary recipient of mental health services "shall be allowed to be discharged from the facility at the earliest appropriate time, not to exceed 5 days *** after he gives any treatment staff person written notice of his desire to be discharged unless he *** withdraws the notice in writing." 405 ILCS 5/3-403 (West 2008).

¶ 21      The evidence establishes that on three occasions prior to April 25, 2010, Connie G. filed requests for discharge. After she filed those requests, Dr. Ritterhoff encouraged Connie G. to rescind them, and she did. After Connie G. filed her final request for discharge on April 25, 2010, Dr. Ritterhoff again suggested that Connie G. rescind her request, but she refused to do so. She later regretted not rescinding that request. In her meeting with Dr. Witherspoon in May, Connie G. told Dr. Witherspoon that she wanted to rescind her April 25, 2010, request for discharge but was told she could not do so.

¶ 22      Other than the hearsay statements contained in Dr. Witherspoon's report, there was no evidence presented at the hearing about Connie G.'s alleged attempt to withdraw her April 25, 2010, request for discharge. Specifically, there was no evidence about when Connie G. tried to orally rescind the request for discharge or to whom she made the oral request to rescind. If Connie G. made the request after the petition for involuntary commitment was filed, it was too late. See 405 ILCS 5/3-403 (West 2008). Moreover, the record is devoid of any written request to rescind, as required by section 3-403 of the Code. See 405 ILCS 5/3-403 (West 2008).

¶ 23      Because there is no evidence that Connie G. withdrew her request for discharge in writing before a petition for involuntary commitment was filed, the trial court did not err in ruling on the petition.


¶ 24                        III. Petition's Compliance With the Code

¶ 25      Next, Connie G. argues that the petition for involuntary commitment did not comply with the Code because (1) the face of it indicates that it is brought as an "emergency admission by certificate," and (2) it was not filed by a member of her treatment team.


¶ 26                           1. Code section identified in petition

¶ 27      Connie G. argues that the petition should have indicated that it was being brought pursuant to section 3-403 of the Code, instead of section 3-600. We find no merit to this contention.

¶ 28      Following a written request for discharge, the State may institute emergency involuntary commitment proceedings against a voluntarily admitted patient. See *In re James E.*, 207 Ill. 2d 105, 114 (2003). The State may seek to admit the patient involuntarily by certification, under section 3-600 *et seq.* of the Code, or by court order, pursuant to section 3-700 *et seq.* of the Code. See *In re Houlihan*, 231 Ill. App. 3d 677, 681 (1992).

¶ 29    Here, after Connie G. requested discharge, a petition and certificates were filed pursuant to sections 3-601 and 3-602 of the Code. The procedures set forth in section 3-600 *et seq.* applied to the petition. Thus, identifying the petition as being brought pursuant to an "emergency admission by certificate" pursuant to section 3-600 was correct.

¶ 30                              2. Who may file the petition

¶ 31    Next, Connie G. argues that Nicole G. was not authorized to file a petition against her because she was not a member of her treatment team.

¶ 32    Courts look at the plain language of a statute as their first indicator of legislative intent. *In re James E.*, 363 Ill. App. 3d 286, 290 (2005). Courts may not read into a statute exceptions, limitations or conditions that conflict with the plain language. *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009).

¶ 33    Section 3-403 of the Code addresses emergency involuntary commitment proceedings against voluntarily admitted patients who have requested discharge. Section 3-403 of the Code provides that after a voluntary recipient of mental health services provides written notice of her desire to be discharged, she may be subject to emergency involuntary commitment if "a petition and 2 certificates conforming with the requirements of paragraph (b) of Section 3-601 and Section 3-602 are filed with the court." 405 ILCS 5/3-403 (West 2008). The plain language of section 3-403 does not limit or restrict who may file a petition for emergency involuntary commitment.

¶ 34    Section 3-601 of the Code, to which section 3-403 refers, sets forth who may file a petition "[w]hen a person is asserted to be subject to involuntary admission and in such a condition that immediate hospitalization is necessary for the protection of such person or others from physical harm." 405 ILCS 5/3-601(a) (West 2008). Section 3-601(a) states: "[A]ny person 18 years of age or older may present a petition to the facility director of a mental health facility in the county where the respondent resides or is present." 405 ILCS 5/3-601(a) (West 2008). Thus, the only limitation on a person filing a petition for emergency involuntary commitment is that she be 18 years of age or older.

¶ 35    Neither section 3-403 nor 3-601 requires that a petition be filed only by a member of the treatment team of the voluntarily admitted patient. We refuse to read such a requirement into the statute. See *Blum*, 235 Ill. 2d at 29. Thus, the petition filed by Nicole G. complied with the Code.

¶ 36                              IV. Least Restrictive Environment

¶ 37    Finally, Connie G. argues that there was no evidence that involuntary commitment was the least restrictive environment for her because Dr. Ritterhoff's one-page handwritten treatment plan was not a proper predispositional report. The State responds that Connie G. waived this issue by failing to object at trial.

¶ 38    Section 3-810 of the Code requires that a predispositional report be prepared when the State is seeking involuntary commitment. *In re Robinson*, 151 Ill. 2d 126, 132-33 (1992). The report must include "information on the appropriateness and availability of alternative

treatment settings, a social investigation of the respondent [and] a preliminary treatment plan." 405 ILCS 5/3-810 (West 2008). The treatment plan must "describe the respondent's problems and needs, the treatment goals, the proposed treatment methods, and a projected timetable for their attainment." 405 ILCS 5/3-810 (West 2008). When a respondent fails to object to the absence of a written predispositional report, oral testimony containing the information required by statute can be an adequate substitute for the formal written report. *Robinson*, 151 Ill. 2d at 134.

¶ 39    Here, Dr. Ritterhoff's one-page "treatment plan" failed to comply with all of the requirements of a predispositional report. Although it listed Connie G.'s medical problems and the medications to be used to treat those problems, it did not contain "information on the appropriateness and availability of alternative treatment settings" or "a social investigation of [Connie G.]." 405 ILCS 5/3-810 (West 2008). Nor did it describe "the treatment goals *** and a projected timetable for their attainment." 405 ILCS 5/3-810 (West 2008). However, since Connie G. did not object to the report, we must determine if Dr. Ritterhoff's testimony was sufficient to satisfy section 3-810 of the Code. See *In re Daniel M.*, 387 Ill. App. 3d 418, 423 (2008).

¶ 40    Dr. Ritterhoff testified that his treatment plan for Connie G. included a series of medications to address her medical conditions, as well as cognitive behavior therapy to improve her feelings. Dr. Ritterhoff examined Connie G.'s social history, including her relationship with her parents and others. He considered alternative treatments available to Connie G. but thought that none were appropriate because Connie G. could not "sufficiently cope outside of the hospital." He explained that the time frame for Connie G.'s treatment depended on her choices and how quickly she figured out the purpose and meaning of her life. He ultimately concluded that Robert Young is the least restrictive environment for Connie G.

¶ 41    Dr. Ritterhoff's testimony was sufficient to meet the requirements of section 3-810 and to establish that Robert Young was the least restrictive environment for Connie G. The trial court properly relied on that testimony to conclude that involuntary commitment was necessary.

¶ 42                                           CONCLUSION
¶ 43    The order of the circuit court of Rock Island County is affirmed.

¶ 44    Affirmed.

¶ 45    JUSTICE SCHMIDT, dissenting:
¶ 46    The public interest exception to mootness does not apply to this case. I would dismiss this appeal as moot. I, therefore, respectfully dissent.
¶ 47    The majority misstates the law when it claims that the public interest exception automatically applies when "the substantive issue on appeal involves the State's compliance with the Code." *Supra* ¶ 15. The public interest exception requires that "there is a need for

an authoritative determination for the future guidance of public officers." *Alfred H.H.*, 233 Ill. 2d at 355. In this case, there is no question of statutory compliance that is in need of authoritative determination. The law with respect to the issues raised by the appellant is well settled; there is no need for additional guidance from this court.

¶ 48 The majority cites to three cases in support of its holding that issues of statutory compliance necessarily fall under the public interest exception. *Supra* ¶ 15. A closer look at these cases shows that they each recognized that the public interest exception applied only if there was a need for guidance on a particular question of law.

¶ 49 The first case is *In re Nicholas L.*, 407 Ill. App. 3d 1061 (2011). The *Nicholas* court stated that statutory compliance qualifies as a matter of public nature. *Id.* at 1071. It also specifically noted that no published opinion in Illinois had addressed the issue raised by the appellant. *Id.* The second case cited by the majority is *In re James H.*, 405 Ill. App. 3d 897 (2010). The *James* court stated that, "[q]uestions of strict compliance with the Code's statutory procedures have been found to involve matters of public importance to which the public-interest mootness exception applies." *Id.* at 904. The court went on to state that the issue raised by the appellant had already been determined by other courts and there was no need for additional guidance. *Id.* The final case cited by the majority is *In re Robin C.*, 395 Ill. App. 3d 958 (2009). This case states that questions of statutory compliance meet the requirements for the public interest exception when "there is a need for an authoritative determination for the future guidance of public officers" in future applications of the Code. *Id.* at 963 (citing *Alfred H.H.*, 233 Ill. 2d at 355).

¶ 50 The majority also failed to follow the guidance of the Illinois Supreme Court that when determining whether a case is public in nature, the court should not look to the general body of law from which the case comes; instead, it should decide whether the individual issues presented are of a public nature. *In re Alfred H.H.*, 233 Ill. 2d 345, 356 (2009).

¶ 51 Relevant to the issues in this case, the supreme court has held that "[s]ufficiency of the evidence claims are inherently case-specific reviews that do not present the kinds of broad public interest issues" which merit an exception. *Id.* at 356-57. Ultimately, this exception is only proper " 'where the law is in disarray or there is conflicting precedent.' " *Id.* at 358 (quoting *In re Adoption of Walgreen*, 186 Ill. 2d 362, 365-66 (1999)).

¶ 52            A. Denied the Opportunity to Rescind Request for Discharge

¶ 53 Connie argues that she was denied the right to rescind her request for discharge. There is no question that she had the right to rescind her request and continue voluntarily admitted. 405 ILCS 5/3-403 (West 2008); see *In re Hays*, 102 Ill. 2d 314, 319 (1984).

¶ 54 However, whether or not the court denied her right to rescind her request for discharge is a fact-sensitive inquiry. Unfortunately, Connie did not raise this issue at trial so we have no factual findings by the court to review. If this issue had been raised at trial, we would review the record to determine if there was sufficient evidence to support the ruling of the trial court. As noted previously, an issue that is based on the sufficiency of the evidence is not a proper issue for the public interest exception. This issue is moot.

¶ 55                    B. Denied Least Restrictive Environment

¶ 56        Connie argues that she was denied treatment in the least restrictive environment because the State failed to file a proper dispositional report. The Mental Health and Developmental Disabilities Code (the Code) (405 ILCS 5/1-100 *et seq.* (West 2008)) requires a written dispositional report be prepared before a disposition is determined. 405 ILCS 5/3-810 (West 2008). Failure to comply with section 3-810 of the Code may be excused when: (1) the plaintiff does not object to the lack of a dispositional report at trial; and (2) the plaintiff makes no showing of prejudice. *In re Robinson*, 151 Ill. 2d 126, 131 (1992). Once these two criteria are met, the only remaining question is "whether the State's efforts to comply with the requirements of section[ ] 3-810 *** were sufficient to accomplish the purposes of [this] statutory provision[ ]." *Id.* Connie did not object at trial and has made no showing that she was prejudiced.

¶ 57        In her opening brief, Connie repeatedly argues that this is a question of whether the evidence supports the decision made by the trial judge. Again, this is an issue that requires us to look at the sufficiency of the evidence. It is not a proper issue for application of the public interest exception. This issue is moot.


¶ 58                    C. Petition Failed to Comply With the Code

¶ 59        The final issue raised by Connie is that the Center filed a petition that did not meet the requirements of the Code for two reasons. First, the preprinted petition form used by the Center includes a list of possible sections of the Code under which a petition may be filed with the court. Instructions on the petition state "check all that apply." The petition submitted by the Center indicated section 3-600 of the Code concerning emergency admission by certificate applied; the petition contained no indication that section 3-403, which concerns a voluntary admittee submitting written notice of desire to be discharged, applied. Second, Connie's roommate signed the petition. Connie did not raise these procedural issues below.

¶ 60        The law concerning procedural errors that occur in connection with involuntary admission procedures is clear. A person "subject to involuntary commitment should not be allowed to participate in a hearing on the merits only to obtain a new hearing by complaining of a procedural defect. Such a [person] forfeits any objection when not made at trial." *In re Joseph P.*, 406 Ill. App. 3d 341, 347 (2010) (citing *In re Nau*, 153 Ill. 2d 406, 419 (1992)). The public interest exception to mootness does not apply to this issue. The law is clear that unless an objection is made at the trial court, the issue cannot be presented on appeal. There is no confusion or need to clarify this rule. This issue is moot.

¶ 61        This case is moot and should be dismissed.