No. 3–09–0565

Filed June 2, 2010

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | | |
|---|---|---|
| In re DARYLL C. | ) | Appeal from the Circuit Court |
| | ) | for the 14th Judicial Circuit, |
| (The People of the State of Illinois, | ) | Rock Island County, Illinois |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 09–MH–6 |
| v. | ) | |
| | ) | |
| Daryll C., | ) | Honorable |
| | ) | Raymond J. Conklin, |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE CARTER delivered the opinion of the court:

The respondent, Daryll C., appeals an order of the circuit court committing him

involuntarily to an inpatient mental health facility. Although that order has expired, the

respondent claims the issues raised by this appeal fall within an exception to the mootness

doctrine. On the merits, the respondent claims that he was denied his right to the effective

assistance of counsel and that the trial court's finding that hospitalization was the least restrictive

treatment setting was not supported by the evidence. We reverse.

FACTS

On July 6, 2009, a petition was filed for the involuntary admission of the respondent to a

mental health facility pursuant to the Mental Health and Developmental Disabilities Code (the

Code) (405 ILCS 5/1–100 et seq. (West 2008)). Attached to the petition was a report prepared

by Dr. Eric Ritterhoff entitled "History and Physical," which indicated that the respondent had bipolar disorder and had had an aortic aneurysm. In addition, the report indicated that the respondent had gone to the Bettendorf police department in his underwear asking for water for his cat. At some point, the police had also been called to the respondent's apartment building because the respondent was looking for loose rocks in the yard with a pick axe, and he was headed toward a power pole or some type of electrical structure. The respondent also stated that he had or was going to take a pick axe and climb up the outside of his apartment building to find out what route his cat would take when the cat climbed out the window.

A case management note prepared by Debra Ferguson, RN, was also attached to the petition, which related information given to Ferguson by the police. That note stated that the police had responded to a call to the respondent's apartment, and the respondent had emerged from a wooded area near the apartment with a box and stated that he would beat Rebecca to heaven. Several hours later, the police responded to the respondent's again, and when the respondent observed the police, he dropped his pants to show that he did not have any contraband. The respondent's mother stated that the respondent had not been taking his medication.

A hearing was held on July 10, 2009. At the beginning of the hearing, the respondent's counsel informed the court that the respondent had gone into the restroom, taking with him a newspaper and other things that indicated he was going to take a nap. Counsel indicated that the court could proceed in the respondent's absence. In addition, the court stated that it understood that the respondent had been informed that the hearing could proceed in his absence and that he could attend the hearing at any time if he chose.

2

The State presented testimony from one witness, Dr. Eric Ritterhoff, a psychiatrist at the Robert Young Mental Health Center. Dr. Ritterhoff testified that he was on call at the hospital on July 5, 2009, when the respondent was brought to the hospital due to erratic behavior. Dr. Ritterhoff diagnosed the respondent with bipolar disorder, manic type with psychotic features. Dr. Ritterhoff opined that if the respondent did not receive treatment for his mental illness, the respondent would be at risk for behavior that was seriously dangerous to his welfare. Dr. Ritterhoff based this opinion on the elevated level of an anticoagulation drug, Coumadin, in the respondent's system. The respondent took Coumadin for a chronic heart condition. The level of Coumadin in the respondent's body was greatly elevated, and he was at risk for spontaneous bleeding if he suffered any kind of injury. The respondent had informed Dr. Ritterhoff that he was not taking the appropriate pills because he had run out of them. Dr. Ritterhoff also based his opinion on the behavior that the respondent exhibited at his apartment before being brought to the hospital. This behavior included the respondent's statement that he was going to use a pick axe to climb up the exterior of his apartment building, and the respondent's statement that he would beat Rebecca to heaven.

Dr. Ritterhoff testified that he had developed a treatment plan for the respondent. Further, he testified that in developing that treatment plan he had considered various alternative dispositions available for the respondent's treatment. Dr. Ritterhoff also testified that hospitalization at an inpatient psychiatric unit was the least restrictive placement for the respondent. Dr. Ritterhoff did not testify regarding what alternatives he had considered or why he had rejected those alternatives.

Regarding the treatment plan and the least restrictive treatment alternative, Dr. Ritterhoff

3

testified as follows:

"Q. Is the treatment plan then based on your psychiatric education, training, experience and your personal examination of Mr. [C.]?

A. The treatment plan that I am recommending for him is based on my personal knowledge of the patient and his problem and the past treatments that have been successful in treating his condition. Mr. [C.] requires an involuntary admission to the psychiatric unit because he is unable to exercise any meaningful judgment about his condition. He is in need of Lithium Carbonate which has proven successful in the past in reversing his manic state based on my only personal treatment of him years ago. In addition, he is in need of close evaluation of his blood disorder by specialists who are trained to administer Coumadin and check his Coumadin level. He also needs to be hospitalized long enough to realize the seriousness of the situation and the type of followup that he needs subsequent to discharge.

When we have been discussing the situation with him and asked him what it would be that he would do if he was to leave, his response has been that he would like to go to a bar and do karaoke singing and try out for the lead role in a film that's being done in Eldridge, Iowa. His ability to consider that he has a medical illness and the need for maintenance Lithium is very poor at this time.

Q. In your opinion, Doctor, then is an inpatient psychiatric unit the least restrictive placement for Mr. [C.] at this time?

A. It is the least restrictive alternative for him to remain in the hospital."

The respondent's attorney did not ask Dr. Ritterhoff any questions and did not present any evidence. The respondent's attorney also indicated to the court that she did not know how long an involuntary commitment typically lasted. The court found the respondent to be a person subject to involuntary admission as defined by section 1–119 of the Code. 405 ILCS 5/1–119 (West 2008). The court further found that hospitalization at the Robert Young Mental Health Center was the least restrictive alternative for treatment. The court ordered the respondent to be involuntarily admitted to the mental health center for a period not to exceed 90 days. 405 ILCS 5/3–813 (West 2008). The respondent appealed.

ANALYSIS

A. Mootness Doctrine

Initially, we must consider the question of mootness in this case. The respondent acknowledges that the involuntary commitment order that is the subject of this appeal expired on October 8, 2009, and thus this appeal is moot. The respondent contends, however, that this case falls within two exceptions to the mootness doctrine. The State disagrees, arguing that none of the exceptions to the mootness doctrine apply here.

Generally, Illinois courts do not decide moot questions, render advisory opinions or consider issues where the result will not be affected by the court's decision. In re Alfred H.H., 233 Ill. 2d 345, 351, 910 N.E.2d 74, 78 (2009). There are three established mootness exceptions: (1) the public interest exception; (2) the capable-of-repetition-yet-avoiding-review exception; and (3) the collateral consequences exception. Alfred H.H., 233 Ill. 2d at 355–63, 910 N.E.2d at 80–84. Whether a particular case falls within one of the exceptions to the mootness doctrine must be examined case-by-case. Alfred H.H., 233 Ill. 2d at 355, 910 N.E.2d at 80. "This

5

evaluation must consider all the applicable exceptions in light of the relevant facts and legal claims raised in the appeal." Alfred H.H., 233 Ill. 2d at 364, 910 N.E.2d at 85.

We first examine the respondent's claim that this case falls within the collateral consequences exception to the mootness doctrine. The collateral consequences exception applies where a party has suffered or is threatened with an actual injury traceable to the defendant and likely to be redressed by a favorable judicial determination. Alfred H.H., 233 Ill. 2d at 361, 910 N.E.2d at 83. In Alfred H.H., the supreme court affirmed that the collateral consequences exception can be applied in mental health cases. Alfred H.H., 233 Ill. 2d at 361-62, 910 N.E.2d at 84. The court recognized that there are a host of potential legal benefits to the reversal of an involuntary commitment. Alfred H.H., 233 Ill. 2d at 362, 910 N.E.2d at 84. "For instance, a reversal could provide a basis for a motion in limine that would prohibit any mention of the hospitalization during the course of another proceeding." Alfred H.H., 233 Ill. 2d at 362, 910 N.E.2d at 84. The court in Alfred H.H. ultimately decided that the collateral consequences exception did not apply to the facts in that case. Alfred H.H., 233 Ill. 2d at 362-63, 910 N.E.2d at 84. The court could not identify any collateral consequence that could stem solely from the adjudication at issue because the respondent had previously been committed involuntarily multiple times and had been convicted of murder. Alfred H.H., 233 Ill. 2d at 363, 910 N.E.2d at 84.

In the instant case, however, while the record indicates that the respondent had a history of mental illness, there is no indication that the respondent had ever been committed involuntarily in the past. Unlike Alfred H.H., collateral consequences of having been involuntarily committed will attach to the respondent and could be used against him in future

proceedings. Thus, we conclude that the collateral consequences exception to the mootness doctrine applies here. See In re Val Q., 396 Ill. App. 3d 155, 159-60, 919 N.E.2d 976, 980-81 (2009); In re Gloria C., Nos. 2–07–0608, 2–07–0609, slip op. at 4-5 (February 17, 2010); People v. Sciara, 21 Ill. App. 3d 889, 894-95, 316 N.E.2d 153, 156-57 (1974).

## B. Ineffective Assistance of Counsel

The respondent claims he was denied the effective assistance of counsel when his attorney failed to request a recess while the respondent was in the restroom, failed to ask the State's only witness any questions, failed to object to the State's failure to file a predisposition report as required by section 3–810 of the Code, and failed to object to the lack of evidence of alternative treatment settings required by sections 3–810 and 3–811 of the Code. 405 ILCS 5/3–810, 3–811 (West 2008). The respondent contends that counsel's performance was deficient and he was prejudiced by her deficiency under Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Alternatively, the respondent maintains that counsel wholly failed to represent him and that prejudice to the respondent should be presumed under United States v. Cronic, 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (1984). The State disagrees, arguing that the respondent was entitled to a reasonable level of assistance and that he received reasonable assistance.

Before we examine the merits of the respondent's claim, we must first determine the proper level of assistance to which the respondent was entitled. Section 3–805 of the Code provides:

> "Every respondent alleged to be subject to involuntary admission shall be represented by counsel. If the respondent is indigent or an appearance has not

7

been entered on his behalf at the time the matter is set for hearing, the court shall appoint counsel for him. *** Counsel shall be allowed time for adequate preparation and shall not be prevented from conferring with the respondent at reasonable times nor from making an investigation of the matters in issue and presenting such relevant evidence as he believes is necessary." 405 ILCS 5/3–805 (West 2008).

Initially, the respondent discusses at length a case from Montana where the Montana supreme court concluded that the Strickland standard for effective assistance of counsel was inappropriate in mental health cases. In re Mental Health of K.G.F., 2001 MT 140, ¶¶ 23-34, 306 Mont. 1, ¶¶ 23-34, 29 P.3d 485, ¶¶ 23-34. Instead, the Montana court adopted certain guidelines to better define the scope of effective representation by counsel in involuntary commitment proceedings in Montana. K.G.F., 2001 MT 140, ¶¶ 63-97, 306 Mont. 1, ¶¶ 63-97, 29 P.3d 485, ¶¶ 63-97. The court's decision in that case was grounded in Montana constitutional and statutory law, (K.G.F., 2001 MT 140, ¶¶ 34-97, 306 Mont. 1, ¶¶ 34-97, 29 P.3d 485, ¶¶ 34-97), and we decline to adopt its approach here.

In 1995, the Fourth District of the Illinois Appellate Court adopted the Strickland standard for determining the level of assistance to which a respondent in involuntary commitment proceedings is entitled. In re Carmody, 274 Ill. App. 3d 46, 54–57, 653 N.E.2d 977, 983–85 (1995). Likewise, the Fifth District has adopted the Strickland analysis for mental health cases. In re Kevin S., 381 Ill. App. 3d 260, 267, 886 N.E.2d 505, 515 (2008). For the reasons stated in Carmody, we now adopt the Strickland standard to determine whether a party to an involuntary commitment has received his or her statutory right to counsel under section 3–805 of

8

the Code. See Carmody, 274 Ill. App. 3d at 54–57, 653 N.E.2d at 983–85; 405 ILCS 5/3–805 (West 2008). As stated in Carmody, "Although grounded in the sixth amendment, we believe that Strickland provides a reasonable and workable standard for reviewing claims of ineffective assistance of counsel" in involuntary commitment proceedings. Carmody, 274 Ill. App. 3d at 55, 653 N.E.2d at 984. We note that this court has adopted the Strickland standard regarding the statutory right to counsel in parental rights termination cases under the Juvenile Court Act of 1987 (705 ILCS 405/1–1 et seq. (West 2008)). See In re A.J., 323 Ill. App. 3d 607, 611, 753 N.E.2d 551, 553 (2001).

Under Strickland, a respondent claiming ineffective assistance of counsel must prove that: "(1) counsel's performance was deficient, such that the errors were so serious that counsel was not functioning as the 'counsel' contemplated by the Code; and (2) counsel's errors were so prejudicial as to deprive [him] of a fair proceeding." Carmody, 274 Ill. App. 3d at 57, 653 N.E.2d at 985. In this case, the respondent claims that counsel was deficient and the respondent was prejudiced by counsel's failure to object to the State's failure to file a predisposition report. The State maintains that the respondent was not prejudiced by the lack of a predisposition report because Dr. Ritterhoff's testimony satisfied the requirement of a report.

"Involuntary admission procedures implicate substantial liberty interests." In re Robinson, 151 Ill. 2d 126, 130, 601 N.E.2d 712, 715 (1992). Under section 3–810 of the Code:

"Before disposition is determined, the facility director or such other person as the court may direct shall prepare a written report including information on the appropriateness and availability of alternative treatment settings, a social investigation of the respondent, a preliminary treatment plan, and any other

9

information which the court may order. *** If the respondent is found subject to involuntary admission, the court shall consider the report in determining an appropriate disposition." 405 ILCS 5/3–810 (West 2008).

In addition, under section 3–811, if a person is found subject to involuntary admission, "the court shall consider alternative mental health facilities which are appropriate for and available to the respondent, including but not limited to hospitalization. *** The court shall order the least restrictive alternative for treatment which is appropriate." 405 ILCS 5/3–811 (West 2008).

Under section 3–810, a written predisposition report is mandatory. 405 ILCS 5/3–810 (West 2008). In addition, under section 3–810 and section 3–811, the court is required to consider information regarding alternatives to treatment in an inpatient facility. 405 ILCS 5/3–810, 3–811 (West 2008). Section 3–811 specifically requires the court to order "the least restrictive alternative for treatment which is appropriate." 405 ILCS 5/3–811 (West 2008). Considering the mandatory nature of these sections, we find that counsel's performance was deficient by failing to object to the State's failure to file a predisposition report.

In addition, we find that the respondent suffered prejudice by counsel's failure to object to the lack of a predisposition report. In Robinson, a predisposition report required under section 3–810 was not filed with the court prior to the hearing, and the respondent did not object. Robinson, 151 Ill. 2d at 129, 601 N.E.2d at 714. The supreme court concluded that when a respondent fails to object to the absence of a predisposition report, "oral testimony containing the information required by the statute can be an adequate substitute for the presentation of a formal, written report." Robinson, 151 Ill. 2d at 134, 601 N.E.2d at 717. Stated another way, "strict compliance with section 3–810 is required only when the legislative intent cannot otherwise be

10

achieved." Robinson, 151 Ill. 2d at 134, 601 N.E.2d at 717. Furthermore, the purpose of section 3–810 is to provide trial judges with the relevant information necessary to determine "whether an individual is subject to involuntary admission to a mental health facility. Other purposes of the statute are to protect against unreasonable commitments and patient neglect, and to ensure adequate treatment for mental health care recipients." Robinson, 151 Ill. 2d at 133, 601 N.E.2d at 716.

In In re Alaka W., 379 Ill. App. 3d 251, 270-71, 884 N.E.2d 241, 256-57 (2008), this court considered Robinson and reversed an involuntary commitment where the State failed to file a predisposition report and failed to present oral testimony containing the information required by section 3–810. "The State satisfies the requirements of section 3-810 absent a formal written report only when the testimony provides the specific information required by the language of the statute." Alaka W., 379 Ill. App. 3d at 270, 884 N.E.2d at 256. While the State's witnesses in that case testified that inpatient hospitalization was the least restrictive treatment option, "[t]his testimony was conclusory and unsupported by a factual basis." Alaka W., 379 Ill. App. 3d at 271, 884 N.E.2d at 257. Specifically, the State did not present any testimony regarding the availability of alternative treatment settings and why they were inappropriate. Alaka W., 379 Ill. App. 3d at 271, 884 N.E.2d at 257.

In the instant case, the State did not file a predisposition report required by section 3–810 of the Code. 405 ILCS 5/3–810 (West 2008). In addition, Dr. Ritterhoff did not testify regarding treatment alternatives to inpatient hospitalization that were available for the respondent and why he had rejected those alternatives in favor of hospitalization. For example, the record contains references to at least one discussion between hospital personnel or the police and the

11

respondent's mother. Dr. Ritterhoff did not state whether he had considered the possibility of placing the respondent with his mother while receiving outpatient treatment or why such an alternative was rejected. See 405 ILCS 5/3–811 (West 2008) (listing placement with a relative as an alternative to hospitalization). Thus, we conclude that the State did not present testimony providing the specific information required by a section 3–810 report. See Alaka W., 379 Ill. App. 3d at 271, 884 N.E.2d at 257; 405 ILCS 5/3–810 (West 2008). The essence of the legal problem in the instant case is that there is no evidence of any attempt, even orally, to come remotely close to what is required by statute as to the least restrictive treatment options. While on the surface it might well appear that the respondent was, indeed, in need of the recommended treatment, there was simply no attempt to follow the statutory mandate to supply specific supportive information as interpreted by Alaka W. Without such testimony, the trial court was not provided with "the information necessary to balance the competing interests involved in involuntary commitment." Alaka W., 379 Ill. App. 3d at 271, 884 N.E.2d at 257. We might speculate that the need for treatment can easily be detected in this case; however, the evidence of that need was concealed in the doctor's mere conclusions, without explanation, that inpatient treatment was the least restrictive alternative. Thus, the State's failure to file a section 3–810 report was reversible error, and the respondent was prejudiced by counsel's failure to object to the lack of this report. See Alaka W., 379 Ill. App. 3d at 270–71, 884 N.E.2d at 256–57; In re Daniel M., 387 Ill. App. 3d 418, 422-23, 900 N.E.2d 331, 334-35 (2008); In re Robin C., 395 Ill. App. 3d 958, 964-65, 918 N.E.2d 1284, 1289-90 (2009). Because the respondent was denied his right to effective counsel, the trial court's order committing the respondent involuntarily to inpatient treatment must be reversed.

C. Sufficiency of the Evidence

The respondent also claims that the trial court's order should be reversed because the evidence did not support the trial court's determination that inpatient hospitalization was the least restrictive alternative for treatment. We need not decide this issue because we have found that the respondent was denied the effective assistance of counsel. In addition, the merits of this issue are intertwined with the merits of the issue decided above. Because the trial court was not presented with the information required by sections 3–810 and 3–811, its determination that inpatient hospitalization was the least restrictive alternative for treatment was not supported by the evidence. 405 ILCS 5/3–810, 3–811 (West 2008). Providing the trial court with the appropriate, statutorily required information avoids the danger of unreasonable commitments and helps ensure adequate treatment for mental health recipients.

CONCLUSION

We agree with the courts in Carmody, 274 Ill. App. 3d at 54–57, 653 N.E.2d at 983–85, and Kevin S., 381 Ill. App. 3d at 267, 886 N.E.2d at 515, that a respondent's right to effective counsel in involuntary commitment proceedings should be analyzed under the Strickland standard. Additionally, the respondent was denied his right to effective counsel when counsel failed to object to the State's failure to file a predisposition report required by section 3–810 of the Code. 405 ILCS 5/3–810 (West 2008). Accordingly, we reverse the judgment of the Rock Island County circuit court. There is no reason to remand this matter for further proceedings as the petitioner must initiate new proceedings if court intervention appears to be warranted at this point in time. See In re Barbara H., 183 Ill. 2d 482, 498, 702 N.E.2d 555, 562 (1998).

Reversed.

13

LYTTON and MCDADE concurring.