2019 IL App (3d) 180264

Opinion filed September 10, 2019

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| *In re* CHRISTINE R., a Person Found Subject to Involuntary Medication, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois |
| (The People of the State of Illinois, | ) ) | |
| Petitioner-Appellee, | ) ) | Appeal No. 3-18-0264 Circuit No. 18-MH-99 |
| v. | ) ) | |
| Christine R. | ) ) | Honorable Alicia N. Washington |
| Respondent-Appellant). | ) | Judge, Presiding |

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justice Carter concurred in the judgment and opinion.
Presiding Justice Schmidt dissented, with opinion.

**OPINION**

¶ 1        The State filed petitions for the involuntary commitment and administration of psychotropic medication to respondent Christine R. At a hearing on the commitment petition, Christine was removed due to disruptive behavior, and her attorney waived Christine's appearance and subsequent appearance at the medication hearing. The trial court granted both petitions. Christine appealed. We reverse.

I. BACKGROUND

¶ 3    Christine R. is a 67-year-old woman with a long history of mental illness. She lived alone in a trailer in a mobile home community and received home visits from the Human Service Center, a behavioral healthcare organization. Christine also received psychiatric care at the center. After she began to act erratically, her neighbor called Christine's sister regarding her mental health and behavior toward the neighbors. The sister called the Emergency Response Service, which resulted in Christine being taken to the mental health unit at UnityPoint Proctor Hospital on April 26, 2018. She would not agree to admission so the staff filed petitions for Christine's involuntary admission and administration of psychotropic medication.

¶ 4    Hearings took place on the petitions on May 1, 2018. At the commitment hearing, Christine was present. As Christine walked into court, she threw a file of paperwork toward the bench and was admonished by the court: "We don't do that ***." Christine explained that she wanted to show the trial court the paperwork she had been provided. Christine asked to represent herself, and the trial court questioned her about her education, employment history, and computer usage. It denied Christine's request and informed her the public defender would represent her. Christine responded that the public defender did not know what was happening.

¶ 5    The hearing continued with one witness, Jayalakshmi Attaluri, Christine's treating psychiatrist, testifying. Christine disrupted the testimony. The court then explained to Christine: "[T]he amazing thing about this process is, if there's something that needs to be corrected, when it is time, when it is time, you will have that opportunity to clarify that information for the Court." As Attaluri testified to the neighbors' concerns about Christine's behavior and threats toward them, Christine interrupted and asked, "What?" and "Where is all this bullshit coming from?" The court addressed Christine, as follows:

"THE COURT: Here's what's amazing about this process.

[CHRISTINE]: Oh my God Almighty.

THE COURT: I recognize you have some concerns about the statements. We will have the opportunity to hear them. This will be the last time that I ask you to stop talking when the doctor talks, okay?"

¶ 6     The witness continued testifying, explaining that the police responded to Christine's trailer. Christine interjected, "And she busted in my door." The trial court stopped the hearing and the following exchange occurred.

"TRIAL COURT: This is where we're gonna have to stop. We're gonna—

[CHRISTINE]: We need for her to object.

THE COURT: No. No. At this point in time, the Court is going to direct this particular process to stop. We're going to take a recess. Then you, [Christine], are going to have the opportunity to go to in the hallway and take a break. Okay?

We're gonna give you a break.

Then you're gonna come back. If you elect to come back in, you're going to have to be quiet throughout the testimony of the doctor. It makes it very difficult—

[CHRISTINE]: Excuse me.

THE COURT: You keep raising your voice. You understand I can hear you. You have everyone in here to assist you if there's any issues. I also want to give the opportunity to each witness so I can hear their testimony.

I have someone who is recording every statement. It's very difficult to record while you're yelling and making those outbursts. You understand that?

[CHRISTINE]: She needs to object to what she's saying. She should listen to her client. That's why I didn't want an attorney. I want to object to some of the stuff she says. I want it in the record and it's put, being put down.

THE COURT: Unfortunately, [Christine], I have noticed you utilizing your finger and—

[CHRISTINE]: I'm going like this. (Indicating.)

THE COURT: You've been pointing throughout this process as well.

[CHRISTINE]: What I want to—

THE COURT: Please take her outside. I think we have an issue right now. I want to make sure we're able to move forward. Thank you.

(Patient taken out of the courtroom.)

THE COURT: I want to make sure her agitation level is taken care of as well.

(A recess was taken.)

THE COURT: Back on the record. Based on the Court's observation of [Christine] and the proximity of [Christine] to the nurse, to the doctor, to the Court, and how aggressive her mannerisms have been inside of this space, the Court has asked [Christine] to be removed from the courtroom."

¶ 7 Christine did not return to the hearing. The trial court asked Christine's attorney whether counsel could adequately represent Christine in her absence. When the attorney responded she could, the State moved to proceed in Christine's absence. The court agreed, finding that, based on its observations and "being on the receiving end of [Christine's] communications and physical actions since the entry of the court," it was in Christine's best interests that she

4

remained absent. The court stated it was difficult to proceed with Christine's outbursts and excused her presence from the hearing.

¶ 8        The hearing continued in Christine's absence. Attaluri testified Christine has suffered from mental illness since she was in her twenties and has had other hospitalizations. Christine has schizoaffective disorder, bipolar type. Attaluri had treated Christine in the behavioral unit from December 19, 2017, to February 16, 2018. Attaluri explained that Christine preferred a particular antipsychotic and believed that everything will be fine if she takes it. Christine was not interested in other medications. Attaluri considered alternative medications that come in an injectable form during Christine's prior hospitalization but opted against them because Christine's psychiatrist opined that Christine did well on Stelazine. According to Attaluri, Christine's conduct in the courtroom mirrored her daily behavior, which included yelling at staff, making demanding remarks, becoming easily agitated, pounding on the table, and violating personal space boundaries.

¶ 9        No other witnesses testified, and Christine's counsel waived closing argument. Counsel stated, "I believe my client's behavior and statements when she was in here somewhat gave her closing statement." The trial court found Christine subject to involuntary admission and ordered her committed for a 90-day period.

¶ 10        The court then recessed and when it reconvened it immediately proceeded to a hearing on the petition for involuntary administration of medication. At the onset of the hearing, Christine's absence was discussed. The State asked the court to take judicial notice of the previous hearing and the statements made concerning Christine's removal from it. Christine's counsel asked the court to waive Christine's presence, which the court did. The hearing took place in Christine's absence.

¶ 11 Attaluri again testified. She requested administration of several medications and explained Christine had been provided a list of the medications and information regarding their side effects and benefits, and had previously refused to take two of the antipsychotic medications Attaluri suggested. In Attaluri's opinion, Christine lacked capacity and her illness prevented her from understanding the need for medication. Medical records from 2004 show that Christine was placed on different medications in the past but did not indicate whether she suffered side effects from them.

¶ 12 Closing arguments were waived and the trial court granted the petition for administration of medication. The court found Christine exhibited threatening and disruptive behavior and deterioration in her ability to function due to lack of sleep and difficult relationships. The court further found Christine lacked capacity and the medications' benefits would outweigh any harm from them. The trial court authorized the testing requested by Attaluri, including "clinically indicated," nonspecified testing. Christine timely appealed.

¶ 13                                                   II. ANALYSIS

¶ 14 There are six issues on appeal: whether the case is moot, whether Christine was denied her rights to be present at the commitment and medication hearings, whether the medication order must be reversed if the commitment order is reversed, whether Christine was denied effective assistance of counsel, and whether the State's statutory and petitioning failures require reversal if counsel's representation was not ineffective.

¶ 15 We begin with a consideration of whether this case is moot. Christine argues that, although the 90-day period for the commitment and medication orders expired, the cause is not moot and should be considered under the public interest and capable of repetition yet evading review exceptions to the mootness doctrine.

6

¶ 16    Generally, Illinois courts will not decide moot questions, render advisory opinions, or consider issues where the court's decision will not affect the result. *In re Mary Ann P.*, 202 Ill. 2d 393, 401 (2002). There are exceptions to the mootness doctrine, including the public interest exception and the capable of repetition yet evading review exception. *In re Atul R.*, 382 Ill. App. 3d 1164, 1167-68 (2008). Under the public interest exception, a moot case may be considered when "(1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question." *In re Alfred H.H.*, 233 Ill. 2d 345, 355 (2009). The capable of repetition yet avoiding review exception allows a moot case to be considered when (1) the challenged action is of a duration too short to be fully litigated before it terminates, and (2) "there must be a reasonable expectation that 'the same complaining party would be subjected to the same action again.' " *Id.* at 358 (quoting *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998)). Mootness is an issue of law this court reviews *de novo*. *In re Rita P.*, 2014 IL 115798, ¶ 30.

¶ 17    It is undisputed this case is moot. The orders for involuntary commitment and administration of medication were entered on May 1, 2018, and were in effect for 90 days. At issue on appeal are the procedures the trial court should take when faced with a disruptive respondent during mental health proceedings. The procedures to be followed in hearings concerning involuntary treatment of mental health services are "matters of a public nature and of substantial public concern." *Mary Ann P.*, 202 Ill. 2d at 402. Thus, this case falls under the public interest exception. It also falls under the capable of repetition yet avoiding review exception. Both the commitment and involuntary administration of medication orders were for limited durations of 90 days, a period too short for litigation. The evidence established that Christine has a long history of mental illness and has been hospitalized on numerous occasions;

7

thus, it is likely that she would face involuntary commitment and administration of psychotropic medications in the future. Despite the moot nature of the case, we find review is appropriate under either exception to the mootness doctrine as discussed.

¶ 18     We next consider whether Christine was denied her right to be present at the commitment and medication hearings. Christine claims her right to be present at the hearings was violated on both constitutional and statutory grounds. Because a nonconstitutional basis exists to resolve Christine's claims, we will not address her constitutional arguments. See *In re E.H.*, 224 Ill. 2d 172, 178 (2006) ("cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort"). We thus begin with a review of Christine's argument that the trial court violated her statutory right to be present at the commitment and medication hearings.

¶ 19     Section 3-806 of the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/3-806 (West 2018)) affords a respondent the right to be present at any proceedings. Under section 3-806, there are two exceptions to the requirement of the respondent's presence where: (1) respondent's counsel waives his or her presence and there is a clear showing to the court that the respondent's presence would subject her to a "substantial risk of serious physical or emotional harm" or (2) respondent's attorney informs the court that the respondent refuses to attend the hearing. 405 ILCS 5/3-806(a)-(b) (West 2018). A respondent may lose her right to attend a commitment hearing if her conduct is so disruptive as to necessitate that she be excluded. *In re Barbara H.*, 288 Ill. App. 3d 360, 367 (1997). Although a mental health respondent may waive her rights, the court should not allow waiver without considering the respondent's capacity to waive her rights and her understanding of the consequences of waiver. *In re Michael H.*, 392 Ill. App. 3d 965, 974 (2009). This court reviews

*de novo* the determination of statutory requirements and whether a respondent's statutory rights have been violated. *In re Amanda H.*, 2017 IL App (3d) 150164, ¶ 34.

¶ 20    In order to determine whether the trial court violated Christine's right to be present at the commitment hearing and subsequent medication hearing, it is necessary to determine whether either of the statutory exceptions to the right to be present apply to this case. Neither party argues and the record does not indicate that Christine refused to attend the hearing, so we review the proceedings to determine whether the remaining statutory exception was invoked so as to waive Christine's right to be present. In order to do so, we must examine the transcript from the proceedings. In reviewing the transcript, it is apparent from the outset that Christine intended to fully participate in all the proceedings at issue before us. At the commencement of the commitment hearing, Christine informed the court that she wanted to represent herself. She represented to the court that she did not believe appointed counsel was prepared. The trial court informed Christine that it would need to assess her ability to represent herself, and after asking Christine a few questions about her education, her employment history, and the last date she used a computer, the court informed Christine that it would not allow her to represent herself and that appointed counsel would continue to represent her.

¶ 21    It is also apparent that Christine disrupted the proceedings by interrupting the court, the prosecutor, and a witness. She further made hand and/or finger gestures and spoke loudly. This behavior continued, despite the trial court's warning to Christine about her behavior and the court's explanation that Christine would have the opportunity, through counsel, to present evidence. After a series of interruptions, the trial court made the following statement:

> "No. No. At this point in time, the Court is going to direct this particular process
>
> to stop. We're going to take a recess. Then you, [Christine], are going to have the

9

opportunity to go in the hallway and take a break. Okay? We're gonna give you a break.

Then you're going to come back. If you elect to come back in, you're going to have to be quiet throughout the testimony of the doctor. It makes it very difficult—"

At this point, Christine says, "[e]xcuse me," and the trial court again tells Christine her loud voice makes it hard for the recording equipment to pick up all the witness's testimony. The court also tells Christine it has noticed her utilizing her finger and then says: "Please take her outside. I think we have an issue right now."

¶ 22    Christine proposes that courts use the following procedure when faced with a disruptive respondent in civil commitment hearings. First, the court must notify the respondent that certain behavior is disruptive or objectionable. Second, the court must warn the respondent that continued disruptive conduct will result in her removal. Third, the court must offer opportunities for the respondent to return. As described above, the procedure that Christine advocates was used, in part, by the trial court in removing Christine. The court warned Christine that her behavior was disruptive and offered her opportunities to align her behavior with courtroom decorum, to no avail. We find the court's removal of Christine was not improper. Her behavior disrupted the proceedings, interrupted the witness, and ignored the court's directives to remain quiet. See *Illinois v. Allen*, 397 U.S. 337, 343 (1970) (a disruptive criminal defendant may be removed from the proceedings after the trial court warns of removal and the defendant continues to disrupt the proceedings with his behavior; defendant is allowed to return once he is able to behave).

¶ 23    Although the court acted properly in removing Christine, it erred when it failed to allow Christine the chance to return to the proceedings or to make a record with the mandatory findings

as to why her return did not take place. When Christine was removed, the court recessed the proceedings. When the hearing resumed, Christine was not present. The court provided for the record that it asked for Christine's removal based on its observation of Christine and her proximity to the nurse, doctor and court, "and how aggressive her mannerisms have been inside of this space." Counsel for Christine informed the court she could adequately represent Christine in her absence. The court concluded it was in Christine's best interest that she remain absent from the hearing, based on its observations and "being on the receiving end of [Christine's] communications and physical actions." The court also found that "it can become a safety issue for her." The court added that Christine's outbursts made it difficult to conduct the hearing before excusing her presence.

¶ 24    The Mental Health Code requires that a respondent's absence at a civil commitment hearing is proper when the respondent's attorney waives her right to be present and the trial court finds by "a clear showing" that the respondent's presence would cause her a "substantial risk of serious physical or emotional harm." 405 ILCS 5/3-806(a) (West 2018). Here, Christine's attorney did not expressly waive her client's presence; rather, she stated counsel could adequately represent Christine in her absence. Moreover, we cannot assume or infer from the circumstances that Christine was offered the chance to return as the record is silent regarding what transpired between Christine's removal and the resumption of the commitment proceeding. See *People v. Carlson*, 221 Ill. App. 3d 445, 447 (1991) (court cannot make presumptions regarding defendant's absence from commitment hearing).

¶ 25    The record does not demonstrate a clear showing that Christine would be subjected to serious physical or emotion harm if she attended the hearing. Rather, the court noted her proximity to others in the courtroom and her aggressive behavior, its own observations of

11

Christine's behavior, and that the court itself was subjected to Christine's "communications and physical actions."These findings are not the statutorily required findings of substantial physical or emotional harm. The trial court made no such mandated findings. The court's observations and speculations regarding Christine's conduct do not equate to findings of substantial physical and emotional harm. Moreover, the record indicates removal was due to Christine's outbursts, not because of a substantial risk of harm to her. The court mentioned more than once the difficulty in recording the proceedings caused by Christine's outbursts. The court noted the presence of a nurse and two guards in the courtroom but it never suggested any courtroom personnel expressed concern about their safety or any concern that Christine would harm herself. The record does not establish that there was any risk of harm to Christine or to the court or others in the courtroom because of Christine's presence.

¶ 26    Moreover, we have no information about what happened when Christine was removed from the commitment hearing. Per the trial court's comments, the plan was to recess for Christine to take a break and collect herself, with the opportunity to return but it segued into her involuntary removal and continued absence without explanation. The court's admonishments regarding Christine's behavior never informed her that her conduct could result in permanent removal from the hearing. To the contrary, the court told Christine that she would be provided the opportunities to tell her story and clarify the evidence presented by the State, so long as she could remain quiet upon her return to the courtroom. Because the record is devoid of any explanation or chronology of what happened to Christine after her removal from the commitment hearing, we do not know if she was afforded a chance to return, as the trial court promised, or even if she wanted or was able to return.

¶ 27 In *In re Daryll C.*, 401 Ill. App. 3d 748, 750 (2010), this court took no issue with a civil commitment hearing taking place in the respondent's absence, where the respondent was in the courthouse washroom taking a nap, he had been informed that the hearing would proceed without him and that he could return at any time and the court was aware that the respondent had been so informed. Respondent's counsel waived the respondent's presence by informing the court the hearing could proceed in the respondent's absence and the respondent's absence was not an issue for the reviewing court. *Id.* Significantly, the record indicated that the respondent was aware the hearing would proceed without him and that he was free to attend at any time. *Id.* Contrary to the facts in *Daryll C.*, no information was presented regarding Christine's whereabouts or whether she wanted or was able to return to the proceeding. From the trial court's comments, we find it unlikely Christine was free to attend the hearings after her removal. The only certainty is that the hearing continued in Christine's absence, contrary to the statutory dictates which mandate a clear showing of substantial harm. See *In re James*, 67 Ill. App. 3d 49, 51 (1978) (respondent denied statutory right to be present where trial court removed her from a portion of commitment hearing without making required finding of harm). We find Christine was denied her right to be present at the commitment hearing and reverse the trial court's involuntary commitment order.

¶ 28 Our reversal of the commitment order also vacates the medication order. See *In re John N.*, 364 Ill. App. 3d 996, 998 (2006) (a respondent who is not ordered to receive or receiving mental health treatment is not a recipient of services, and the trial court cannot order the administration of psychotropic medication). However, we address Christine's argument to clarify the statutory requirements of a respondent's right to be present. At the medication proceeding, Christine was never provided the opportunity to be present at the hearing at any

13

time. Rather, at the beginning of the hearing, the court sought statements regarding Christine's absence. The State asked the court to take judicial notice of the commitment hearing and "statements that were made in regards to her removal from the hearing." Christine's attorney asked that Christine's presence be waived "given the last hearing." The trial court accepted the waiver, and the parties proceeded on the merits of the petition in Christine's absence.

¶ 29    As noted above, the record lacks any information regarding Christine's whereabouts after her removal or about whether Christine wanted to be present at the medication hearing. Although Christine's attorney sought waiver of her presence, she did not indicate whether Christine wished to be present, whether she became less agitated during the recess between proceedings, or whether she was willing for the medication hearing to proceed in her absence. Her attorney did not expressly waive her right to be present at either hearing, and the court's findings did not establish that Christine was at risk of physical or emotional harm. As occurred with the commitment hearing, the trial court permitted Christine's absence in violation of the statutory requirement that she be present. We find that her statutory right to be present at each hearing was violated.

¶ 30    Because we find Christine was denied her statutory right to be present at the commitment and medication hearings, we reverse on those grounds and need not consider the other issues she raises on appeal.

¶ 31                                III. CONCLUSION

¶ 32    For the foregoing reasons, the judgment of the circuit court of Peoria County is reversed.

¶ 33    Reversed.

¶ 34    PRESIDING JUSTICE SCHMIDT, dissenting:

¶ 35    It is undisputed that this case is moot. I would dismiss it as such.

14

¶ 36    The majority finds that the public interest and capable of repetition exceptions to mootness apply. These exceptions are to be narrowly construed. *Alfred H.H.*, 233 Ill. 2d at 355-56; *In re A.W.*, 381 Ill. App. 3d 950, 954 (2008). The majority does not boldly go where no court of review has gone before. Because it breaks no new ground, the public interest exception does not apply. See *In re Adoption of Walgreen*, 186 Ill. 2d 362, 365 (1999) (public interest exception requires a "need to make an authoritative determination for future guidance of public officers"). This exception is also proper "where the law is in disarray or there is conflicting precedent." (Internal quotation marks omitted.) *Alfred H.H.*, 233 Ill. 2d at 358. This opinion says nothing that has not been said before and does not resolve a conflict in our precedent. See *James*, 67 Ill. App. 3d at 51 ("Unless there is a specific finding that emotional or physical harm would result from a respondent's presence in the courtroom, that individual should be permitted to be present ***.").

¶ 37    Further, the fact that respondent may face involuntary admission and involuntary medication in the future is an insufficient basis to apply the capable of repetition exception. *Alfred H.H.*, 233 Ill. 2d at 358-60. There is no clear indication that the issue the majority chooses to address could be of use to respondent in future litigation. *Id.* at 360.

¶ 38    Under the majority's analysis, virtually every case involving involuntary admission/administration of drugs would fall within a mootness exception. I respectfully dissent.

15