**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 170415-U

Order filed January 19, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

_____

| | | |
|---|---|---|
| *In re* CATHLEEN E., | ) | Appeal from the Circuit Court |
| A Person Found Subject to Involuntary | ) | of the 13th Judicial Circuit, |
| Commitment and Involuntary Medication | ) | La Salle County, Illinois. |
| | ) | |
| (The People of the State of Illinois | ) | |
| | ) | Appeal No. 3-17-0415 |
| Petitioner-Appellee, | ) | Circuit No. 17-MH-10 |
| | ) | |
| v. | ) | |
| | ) | |
| Cathleen E., | ) | The Honorable |
| | ) | H. Chris Ryan, Jr. |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justice Lytton concurred in the judgment.
Justice Schmidt dissented.

_____

**ORDER**

¶ 1    *Held*:  (1) The respondent's appeal of the trial court's orders subjecting her to involuntary hospitalization and the involuntary administration of psychotropic medication was reviewable under the "capable of repetition yet evading review" exception to mootness; (2) the State's petitions for involuntary commitment and involuntary medication were fatally deficient; and (3) the respondent received ineffective assistance of counsel.

¶ 2    The trial court ordered the Respondent-Appellant, Cathleen E. (Cathleen), subject to involuntary commitment at an inpatient mental health treatment facility and subject to involuntary treatment through the administration of psychotropic medications. Cathleen appeals those judgments, arguing that the State failed to present evidence as to certain essential elements of the involuntary commitment and involuntary medication statutes in the Mental Health and Developmental Disabilities Code (the Code) (405 ILCS 5/1-100 *et seq.* (West 2016)) and otherwise failed to satisfy various mandatory requirements of the Code.

¶ 3                                                    FACTS

¶ 4    Cathleen E. is a 65-year-old resident of the Ravlin Center, a structured public housing apartment building in Ottawa. The Ravlin Center is a senior community that offers its residents daily meals and a variety of services, including intensive health and therapeutic services for persons with disabilities, especially following discharge from hospitalization.

¶ 5    Cathleen had admitted herself voluntarily to OSF St. Elizabeth Medical Center (OSF) for mental health treatment, but later decided that she wanted to go home. On June 21, 2017, the OSF staff filed a petition for Cathleen's involuntary admission. The petition alleged that Cathleen was at risk of harming herself or others and was unable to provide for her basic physical needs. As a basis for these allegations, the petition provided only the following: "Patient is manic as evidenced by rambling, hyperverbal speech, flight of ideas, and not being able to achieve sleep. Patient is delusional as evidenced by saying 'I'm pregnant,' 'I'm the white lily,' & references to a relationship with an individual who denies such."

¶ 6    Also on June 21, 2017, Dr. Michael Glavin, Cathleen's treating psychiatrist, filed a petition for involuntary medication under the Code. The petition recited the required statutory elements for the involuntary administration of medication but included no factual evidence

demonstrating that the elements had been satisfied. The trial court appointed the La Salle County Public Defender's office to represent Cathleen. Cathleen's counsel did not object to the petitions' insufficiency or move to dismiss the petitions for failure to state a claim.

¶ 7     The involuntary commitment and medication hearings took place on June 27, 2017. Immediately prior to the commitment hearing, Cathleen told the trial court "I would be ready only I don't have my hearing aids." She asked the court to "please keep that in mind," and explained that "I might talk loud, but I'm not acting out." Neither Cathleen's defense counsel nor the court acknowledged Cathleen's statements or paused the proceeding so that Cathleen could obtain her hearing aids.

¶ 8     Dr. Glavin diagnosed Cathleen with bipolar disorder, manic state, with psychosis. He stated that Cathleen would "get irritable and yell at staff and *** threaten to sue staff members," but she had not hit anyone or exhibited any physical aggression. Cathleen had previously been hospitalized for overdosing on Ambien. Dr. Glavin testified that, because of her mental illness, Cathleen would not be able to care for her basic physical needs so as to guard herself from serious harm. However, Dr. Glavin did not testify as to Cathleen's ability to provide for her food, shelter, or medical needs.

¶ 9     Dr. Glavin explained that OSF is a short-term facility. He opined that Cathleen needed a longer-term facility. For that reason, Dr. Glavin asked the trial court to order that Cathleen be involuntarily admitted to McFarland Mental Health Center (McFarland) in Springfield. The State did not file a predispositional report that included a report on alternative treatment settings and a social investigation of Cathleen, as ordered by the trial court. Instead, it filed a one-page form treatment plan.

¶ 10    During closing arguments, Cathleen twice asked when it was "her turn" to speak. On both occasions, she received no response from the trial court, her attorney, or the State's attorney. The trial court found that Cathleen had a mental illness that rendered her unable to safeguard herself from serious harm without treatment on an inpatient basis. The court ordered her committed to McFarland for up to 90 days on "basic needs" grounds only. Thereafter, Cathleen's counsel announced: "I did not call my client [to testify] because I don't think she's capable of testifying rationally at this time."

¶ 11    The involuntary medication hearing then commenced. The State questioned Dr. Glavin about the benefits and dosages of the four medications he had requested but did not ask Dr. Glavin about the risks of two of the medications (Lithium and Haldol). Dr. Glavin testified that he provided Cathleen with written information about the medications and their side effects, but he did not testify that he gave her written information about alternatives to medication, as required by section 2-107.1 of the Code. Moreover, the State did not ask Dr. Glavin his opinion about Cathleen's capacity to make a reasoned decision to accept or refuse medication. The State also did not ask the doctor questions relating to the other statutory elements of the involuntary medication statute.

¶ 12    Before closing arguments, Cathleen asked "do I get to share?" Once again, her question was disregarded.

¶ 13    The trial court found Cathleen subject to involuntary medication for a period of up to 90 days at McFarland. The court did not explain why it believed Cathleen lacked capacity to make a reasoned decision about the proposed medication.

¶ 14                                ANALYSIS

¶ 15                              1. Mootness

- 4 -

¶ 16        The State concedes that it committed reversible error by failing to present any evidence that Cathleen lacked the capacity to make a reasonable decision to accept or refuse medication and by failing to prove that she had received all the statutorily required written information about the proposed medications at issue (including the risks and benefits of each medication and alternatives to medication). The State also concedes that Cathleen's counsel provided ineffective assistance by: (1) failing to hold the State to the Code's mandatory requirements for involuntary commitment, including section 3-810's requirement of a predisposition report, (2) failing to object to the State's failure to present evidence on each and every element of the involuntary treatment statute (including that the proposed commitment was the least restrictive alternative), (3) proceeding with the hearings although Cathleen did not have her hearing aids with her, and (4) failing to allow Cathleen to testify in her own defense and making a prejudicial statement as to why he did not call Cathleen as a witness.

¶ 17        Nevertheless, the State argues that we should dismiss this case as moot. The 90-day involuntary commitment order that is the subject of this appeal has already expired, and Cathleen has been discharged from treatment. Accordingly, this appeal is moot. *In re Robert S.*, 213 Ill. 2d 30, 45 (2004); see also *In re J.T.*, 221 Ill. 2d 338, 349-50 (2006).

¶ 18        Generally, courts of review do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected by the court's decision. *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). However, there are three established exceptions to the mootness doctrine: (1) the "public-interest" exception, applicable where the case presents a question of public importance that will likely recur and whose answer will guide public officers in the performance of their duties; (2) the "capable-of-repetition" exception, applicable to cases involving events of short duration that are capable of repetition, yet evading review; and (3) the

- 5 -

"collateral-consequences exception," applicable where the involuntary treatment order could return to plague the respondent in some future proceeding or could affect other aspects of the respondent's life. *Id.* at 355-63. Whether a particular appeal falls within one of these exceptions must be determined on a case-by-case basis, considering each exception in light of the relevant facts and legal claims raised in the appeal. *Id.* at 355, 364*; In re Daryll C.*, 401 Ill. App. 3d 748, 752 (2010).

¶ 19    The "capable of repetition" exception applies when the complaining party demonstrates that (1) the challenged action is too short in duration to be fully litigated prior to its cessation and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again. *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998). In this case, there is no question that the first criterion has been met, as the trial court's 90-day commitment and medication orders were of such short duration that they could not have been fully litigated prior to their cessation. Thus, the only question is whether there is a reasonable expectation that the respondent will personally be subject to the same action again. That occurs when the resolution of the issue raised in the present case would be likely to "affect a future case involving the respondent" or to "have some bearing on a similar issue presented in a subsequent case" involving the respondent. *Alfred H.H.*, 233 Ill. 2d at 360.

¶ 20    This case satisfies that standard. Cathleen has a history of hospitalization for mental illness. Given her history, it is reasonably likely that she will face additional involuntary admission and involuntary treatment proceedings in the future. *In re Joseph M.*, 405 Ill. App. 3d 1167, 1175 (2010) (finding likelihood of recurrence and applying capable of repetition exception to mootness where respondent had a history of mental illness and had been subject to prior involuntary admissions).

¶ 21    In addition, the resolution of the legal issues raised in the present case would be likely to affect a future case involving Cathleen or to "have some bearing on a similar issue presented in a subsequent case" involving Cathleen. *Alfred H.H.*, 233 Ill. 2d at 360. Cathleen contends that the State and the trial court failed to comply with certain mandatory requirements of the Code. Specifically, among other things, she argues that the trial court erred by granting the involuntary commitment petition even though: (1) the State's petition failed to state a claim because it provided no facts suggesting that statutory elements were satisfied in Cathleen's case; and (2) the State failed to file a predisposition report or equivalent testimony that included a social investigation of Cathleen and a report on alternative treatment settings, as required by section 3-810 of the Code (405 ILCS 5/3-810 (West 2016)). Cathleen further argues that the trial court erred in granting the State's petition for involuntary medication because: (1) Dr. Glavin, Cathleen's treating psychiatrist, did not testify that he gave Cathleen written information about alternatives to medication, as required by section 2-102(a-5) of the Code (405 ILCS 5/2-102(a-5) (West 2016)); (2) the State did not ask Dr. Glavin whether he believed that Cathleen lacked the capacity to make a reasoned decision to accept or refuse medication; and (3) the State did not ask Dr. Glavin any questions relating to the other statutory elements of the involuntary medication statute, and Dr. Glavin offered no opinions on these matters.

¶ 22    It is reasonably likely that the resolution of each of these issues of statutory compliance will affect future cases involving Cathleen, because she will likely again be subject to involuntary admission and medication and the court will likely again commit the same alleged errors. See *In re Val Q.*, 396 Ill. App. 3d 155, 161 (2009) (*overruled on other grounds by In re Rita P.*, 2014 IL 115798, ¶¶ 33-34); *In re Jonathan P.*, 399 Ill. App. 3d 396, 401 (2010). The errors committed in this case recur continually in cases involving involuntary commitment and

medication under the Code. See, *e.g.*, *In re Amanda H.*, 2017 IL App (3d) 150164, ¶¶ 42-46 (the State failed to present a written predisposition report or testimony providing the information required to be included in such a report); *In re Lance H.*, 402 Ill. App. 3d 382, 387-88 (2010) (the State failed to include the names and addresses of family or friends in its involuntary commitment petition, as required by the Code); *In re R.K.*, 338 Ill. App. 3d 514, 521-22 (2003) (State did not present any evidence that respondent lacked the capacity to make a reasoned decision about her treatment); *In re Richard C.*, 329 Ill. App. 3d 1090, 1094-95 (2011) (the respondent was provided no written information about the risks and benefits of the medications at issue or any alternatives to medication). Accordingly, the "capable of repetition" exception applies here.

¶ 23        The State and the dissent correctly note that fact-specific issues are not subject to the "capable of repetition" exception because such issues are unlikely to recur in future cases and the resolution of such issues will not impact future cases. *Alfred H.H.*, 233 Ill. 2d 345 at 359-61. Contrary to the State's and the dissent's assertion, however, the instant appeal does not merely involve fact-specific issues. Rather, it involves the State's complete failure to observe several mandatory procedural and substantive requirements of the Code, the trial court's entry of involuntary commitment and medication orders despite those statutory violations, and Cathleen's counsel's ineffectiveness for failing to object to the State's errors and omissions. Our appellate court has recognized that the "capable of repetition" exception applies under these circumstances. See, *e.g.*, *Val Q.*, 396 Ill. App. 3d 155 (applying the "capable of repetition" exception where the respondent contended that the trial court erred by delegating to physicians its duty of assessing the risks of the treatment and it was reasonably likely that the resolution of that issue "would affect future cases involving respondent, because respondent will likely again

be subject to involuntary treatment and the court will likely again commit the same alleged error"); *In re Tara S.*, 2017 IL App (3d) 160357, ¶ 17 (applying the "capable of repetition" exception to claim of ineffective assistance of counsel in proceedings under the Code).

¶ 24    Because we hold that the capable of repetition applies, we do not need to address Cathleen's argument that the "collateral consequences" exception also applies. We now turn to the merits of this appeal.

¶ 25                    2. The Involuntary Commitment and Medication Petitions

¶ 26    The petition for involuntary commitment filed in this case was fatally deficient. The petition stated the pre-printed statutory elements for involuntary commitment but provided no facts suggesting that these required elements were met in Cathleen's case. The petition therefore failed to state a claim. *Marshall v. Burger King Corp.*, 222 Ill. 2d 42, 429-30 (2006); *Kucinsky v. Pfister*, 2020 IL App (3d) 170719, ¶ 55; *Schloss v. Jumper*, 2014 IL App (4th) 121086, ¶ 20; see also *In re Jessica H.*, 2014 IL App (4th) 130399, ¶¶ 26, 35. Moreover, the State did not file a predisposition report that included a social investigation of Cathleen and a report on alternative treatment settings, as required by section 3-810 of the Code (405 ILCS 5/3-810 (West 2016)). Nor did the State present oral testimony providing the information required by that section. As the State correctly concedes, these failures by the State require reversal of the trial court's commitment order. *In re Alaka W.*, 379 Ill. App. 3d 251, 271 (2008); *Daryll C.*, 401 Ill. App. 3d at 756; *In re Daniel M.*, 387 Ill. App. 3d 418, 422 (2008).

¶ 27    The petition for involuntary medication was also insufficient as a matter of law. Although Dr. Glavin testified that he provided Cathleen with written information about the proposed medications and their side effects, he did not testify that he gave her written information about alternatives to medication, as required by section 2-102(a-5) of the Code (405 ILCS 5/2-102(a-5)

- 9 -

(West 2016)). Moreover, the State did not ask Dr. Glavin whether he believed that Cathleen lacked the capacity to make a reasoned decision to accept or refuse medication. Nor did the State ask him questions relating to the other statutory elements of the involuntary medication statute. Dr. Glavin offered no opinions on these matters. Accordingly, the State failed to demonstrate by clear and convincing evidence that Cathleen lacked the capacity to make a reasoned decision about her medical treatment, as required by section 2-107.1(a-5)(4)(E) of the Code (405 ILCS 5/2—107.1(a-5)(4)(E) (West 2016)); *In re Wilma T.*, 2018 IL App (3d) 170155, ¶ 23; *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 22. This failure requires reversal of the trial court's involuntary medication order. *Wilma T.*, 2018 IL App (3d) 170155, ¶ 23; *Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 22. The State concedes that it committed these errors and that the errors were reversible and could not be forfeited. It was the State's Attorney's duty to ensure that the petitions for involuntary commitment and medication were properly prepared. 405 ILCS 5/3-101(a) (West 2016). The failure to do so rendered both petitions invalid.

¶ 28        Moreover, Cathleen received ineffective assistance of counsel because her attorney failed to object to the aforementioned fatal deficiencies in the State's petitions or move to dismiss the petitions for failure to state a claim. He also failed to hold the State to the Code's substantive requirements by neglecting to object to the State's failure of proof as to certain required elements of its case under the Code, such as the written notice requirement and the required showing that the respondent lacks the capacity to make a reasoned decision about her treatment. That rendered Cathleen's counsel's performance deficient and prejudicial, and therefore ineffective. *In re Jessica H.*, 2014 IL App (4th) 130399, ¶¶ 26, 35 (counsel's failure to notify the trial court that the State's commitment petition was untimely or to move to dismiss the petition constituted ineffective assistance); *Daryll C.*, 401 Ill. App. 3d 748 at 756–57 (counsel's failure to object to

- 10 -

the State's failure to file a predisposition report or present equivalent testimony constituted ineffective assistance); see also *Alaka W.*, 379 Ill. App. 3d at 271; *Daniel M.*, 387 Ill. App. 3d at 422. Cathleen's counsel was also ineffective for refusing Cathleen's request to testify and for not asking the court to allow Cathleen to get her hearing aids so she could hear the trial testimony.

¶ 29                                                  CONCLUSION

¶ 30        For the foregoing reasons, we reverse the judgment of the circuit court of La Salle County.

¶ 31        Reversed.

¶ 32        JUSTICE SCHMIDT, dissenting:

¶ 33        While the majority's concerns are well founded, we are bound by our supreme court's admonishment not to decide moot questions. *Alfred H.H.*, 233 Ill. 2d at 351. The majority finds that this case falls within the "capable of repetition, yet evading review" exception to the mootness doctrine. *Supra* ¶ 20. This exception has two elements: (1) the challenged action is in its duration too short to be fully litigated prior to its cessation and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again. *In re A Minor*, 127 Ill. 2d 247, 258 (1989).

¶ 34        The first element is satisfied. However, the second element is not. The fact that respondent may face involuntary admission and involuntary medication in the future is not a sufficient basis to satisfy the second element of this exception to the mootness doctrine. *Alfred H.H.*, 233 Ill. 2d at 358-61. Respondent is not arguing that any statute is unconstitutional, and she may be subjected to the same unconstitutional statute in the future. Nor does she challenge the trial court's interpretation of a statute. She argues only that the trial court and the State failed to follow certain statutory procedures, and her counsel was ineffective for failing to object to the

failure to follow the procedures. Her argument is fact-specific. There is no clear indication of how a resolution of the issues raised in this case could be of use to respondent in a future litigation as any future litigation would be based upon new petitions, new hearings, new evidence, and an assessment of whether the State met its burden of proof in those cases. See *id.* at 360 (making a similar statement about the argument raised in that case). Nothing in the majority's decision constitutes anything other than a recitation of existing case law. In other words, the majority decision does not offer any new guidance to be used in the future by litigants. While it is troubling that the court and parties below appear to repeatedly disregard procedural requirements in involuntary commitment proceedings, there is no justification for issuing this order, which applies already existing law to the facts of this case and has no precedential value.

¶ 35　　　The majority finds the above exception to the mootness doctrine is satisfied and does not address the alternative mootness exception raised by respondent on appeal. Specifically, respondent argues that the public interest exception to the mootness doctrine is also satisfied. This argument should be rejected as well.

¶ 36　　　The public interest exception is applicable only if there is a clear showing that: (1) the question is of a substantial public nature; (2) an authoritative determination is needed for future guidance; and (3) the circumstances are likely to recur. *In re J.B.*, 204 Ill. 2d 382, 387 (2003). The exception is narrowly construed and requires a clear showing of each criterion. *In re India B.*, 202 Ill. 2d 522, 543 (2002). The second element is not satisfied in this case. This exception does not apply when there are no conflicting precedents requiring an authoritative resolution. The majority does not resolve any conflicting issues in the law. Rather, it applies existing case

law to the specific facts of this case. Therefore, an authoritative determination is not necessary as required by this exception.

¶ 37        This appeal should be dismissed as moot.